CASE NO. 22-30490

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

KATELYNN MCLIN,
**Plaintiff – Appellant**

v.

TWENTY-FIRST JUDICIAL DISTRICT; ROBERT H. MORRISON, III,
**Defendants – Appellees**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA
(USDC NO. 3:21-CV-411)

ORIGINAL BRIEF OF APPELLANT KATELYNN MCLIN

Respectfully submitted:

THE LAW OFFICE OF
KEVIN S. VOGELTANZ, LLC
Kevin S. Vogeltanz (Bar #32746)
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com
*Attorney for Plaintiff / Appellant*
*Katelynn McLin*

# I. CERTIFICATE OF INTERESTED PERSONS

(1)  No. 22-30490, *McLin v. Twenty-First Judicial Dist*
USDC No. 3:21-CV-411

(2)  The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.  Katelynn McLin, plaintiff/appellant

2.  The Twenty-First Judicial District, defendant/appellee

3.  Robert H. Morrison, III, defendant/appellee

4.  Kevin S. Vogeltanz, Esq.
Law Office of Kevin S. Vogeltanz, LLC
Attorney for Plaintiff/Appellant Katelynn McLin

5.  Thomas M. Flanagan, Esq.
Camille E. Gauthier, Esq.
Flanagan Partners LLP
Attorneys for Defendant/Appellees

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com
*Attorney for Plaintiff / Appellant Katelynn McLin*

## II.    REQUEST FOR ORAL ARGUMENT

Appellant Katelynn McLin requests oral argument.  As discussed throughout this brief, this case raises several nuanced and not-often-addressed legal issues for which oral argument seems particularly appropriate.  These issues include whether Ms. McLin's former employer – the Twenty-First Judicial District – has the capacity to be sued under Louisiana substantive law for its own employment-based torts, or directly under Title VII; whether the Twenty-First Judicial District is more properly categorized as a Louisiana state agency or political subdivision for purposes of Eleventh Amendment immunity; the pleading standards applicable to employment discrimination plaintiffs in this Circuit; and the extent to which a district court, if at all, may sustain a qualified immunity defense on a Rule 12(b)(6) motion to dismiss by making dispositive findings of fact that neither appear in the pleadings nor arise from plaintiff's well-pled allegations.

## III.   TABLE OF CONTENTS

I.    CERTIFICATE OF INTERESTED PERSONS .......................... i

II.   REQUEST FOR ORAL ARGUMENT ......................... ii

III.  TABLE OF CONTENTS ................................................ iii

IV.   TABLE OF AUTHORITIES ........................................ v

V.    JURISDICTIONAL STATEMENT ............................... 1

VI.   STATEMENT OF ISSUES ................................. 3

VII.  STATEMENT OF THE CASE ............................... 5

VIII. SUMMARY OF THE ARGUMENT ......................... 27

IX.   ARGUMENT ....................................................... 31

    A.    *This Court Reviews the District Court's Order and Reasons de Novo* ................................................................ 31

    B.    *The Twenty-First Judicial District Employed Ms. McLin and Remains Liable to Her under Title VII for Intentional Race Discrimination* ................................................ 32

        1.    *The 21st JD is a Statutorily Created Governmental Unit and Political Subdivision* ................................... 33

        2.    *The 21st JD Is Capable of Being Sued for Employment Torts under a Roberts-style Analysis* ......................... 35

        3.    *At Least One Louisiana State Court Has Been Successfully Sued under Title VII in the Eastern District of Louisiana* ..................................................... 40

        4.    *Federal Law Does Not Permit Louisiana to Regard Bona Fide Employers as Beyond the Reach of Title VII for Their Own Illegal Discrimination* .......................... 45

        5.    *Alternatively, Federal Rule 17(b) Expressly Permits Ms. McLin to Sue Her Employer as an "Unincorporated Association"* ............................................................... 51

        6.    *If the 21st JD Is a Political Subdivision, then Eleventh Amendment Immunity Does Not Apply* ...................... 52

   B.   *Chief Judge Morrison Fired Ms. McLin and Remains Liable to Her under Section 1981 and the First Amendment for His Intentional Discrimination* ................................................... 53

        1.    *Plaintiff's Race Discrimination Claim Is Plausible and Well Pled* ........................................................................ 54

        2.    *Chief Judge Morrison Is Not Entitled to Qualified Immunity This Stage of the Proceeding based on Plaintiff's Well Pled Allegations* ................................... 61

**X.**    **CONCLUSION** ................................................................. **67**

**CERTIFICATE OF SERVICE** ................................................. **68**

**CERTIFICATE OF COMPLIANCE** ...................................... **69**

# IV.   TABLE OF AUTHORITIES

## Cases

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............. 54, 56, 57, 60, 62

*Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762 (5th Cir. 2019)... 3, 29, 55, 56, 57, 58, 60, 62

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)........................................... 31

*Darby v. Pasadena Police Dep't,* 939 F.2d 311, 313 (5th Cir. 1991)...... 48, 49, 50

*Davis v. La. Computing Corp.*, 394 So.2d 678 (La. Ct. 4 App. 1981)..... 66

*Dejoie v. Medley*, 2008-2223, p. 4-10 (La. 5/5/09); 9 So.3d 826, 828-32. 43, 44, 49, 50

*Foley v. Univ. of Houston Sys.,* 355 F.3d 333 (5th Cir. 2003)........... 23, 62

*Green v. Dist. Attorney Office*, Civ. Action No. 08–3685, 2009 WL 651132, at *5 (E.D.La. Mar. 10, 2009) .................................................. 39

*Griffith v. City of New Orleans*, CIV.A. 11-245, 2013 WL 2555787, at *1 (E.D. La. June 10, 2013). ................................... 28, 41, 42, 43, 44, 49, 50

*Griffith v. Louisiana*................................................................. 34, 41, 42

*Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) ..................... 61

*Hudson v. City of New Orleans*, 174 F.3d 677, 679 (5th Cir. 1999) . 52, 53

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) 31

*Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 436 (5th Cir. 1985). ............................................................................... 53

*Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004)............................. 62

*Laugand v. Bank of New York Mellon*, CV 17-00083, 2017 WL 4276474, at *2 (M.D. La. Sept. 26, 2017)............................................................. 39

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ........... 29, 54, 55

*Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed. Appx. 363, 367 (5th Cir. 2008) ...................................................................... 62

*Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006) ..................... 9, 63, 64, 66

*Modica v. Taylor,* 465 F.3d 174 (5th Cir. 2006). .................................... 23

*Morice v. Hosp. Serv. Dist. #3*, 430 F.Supp.3d 182, 199 (E.D. La. 2019) ................................................................................................ 35

*Ormond v. Louisiana*, CIV. A. 09-7202, 2009 WL 6419040, at *1 (E.D. La. Dec. 22, 2009) .................................................................. 39

*Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 574 (1968). ....................................................... 63

*Porche v. St. Tammany Par. Sheriff's Office*, 67 F.Supp.2d 631, 632 (E.D. La. 1999) ............................................................... 52, 53

*Quebedeaux v. Dow Chem. Co.*, 2001-2297, 4 (La. 6/21/02), 820 So. 2d 542, 545. ...................................................................... 39, 40

*Raj v. Louisiana State Univ.*, 714 F.3d 322 (5th Cir. 2013). ........ 8, 24, 55

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) .............. 31

*Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So.2d 341 (La. 1994) .................................................. 20, 27, 35, 36, 37, 38

*Rutherford v. Louisiana*, CIV.A. 10-1987, 2011 WL 692031, at *5 (E.D. La. Feb. 17, 2011) ................................................................ 39

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)..... 8, 24, 55, 56, 60, 62

**Statutes**

28 U.S.C. § 1291 ....................................................................................... 2

42 U.S.C. § 1981. ........................... 3, 5, 7, 17, 18, 23, 27, 53, 54, 60 61, 62

42 U.S.C. § 1983 ................................... 3, 23, 27, 40, 41, 61, 63

La. Rev. Stat. Ann. § 13:477(21) ............................................................ 33

La. Rev. Stat. Ann. § 13:5101 .................................................... 40

La. Rev. Stat. Ann. § 13:5102(B)(1). ................................... 28, 34

La. Rev. Stat. Ann. § 23:302(2) ................................................ 34

La. Rev. Stat. Ann. § 23:961 ................................ 17, 52, 66, 67

La. Rev. Stat. Ann. § 40:1491 .................................................. 35

La. Rev. Stat. Ann. § 40:1500(A). ........................................... 35

La. Rev. Stat. Ann. § 46:1060 .................................................. 35

La. Rev. Stat. Ann. § 49:308(F)............................. 28, 33, 40, 44

Title VII (42 U.S.C. §§ 2000e – 2000e17 (as amended)) .... 5, 7, 17, 19, 21, 23, 27, 28, 32, 40, 41, 42, 43, 44, 45, 47, 48, 49, 50, 54, 56, 60

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................. 2, 18, 31

Fed. R. Civ. P. 12(b)(6) ..... 2, 3, 8, 10, 18, 30, 31, 54, 55, 57, 62, 63, 64, 67

Fed. R. Civ. P. 15(a)(1)(B), ........................................................ 2

Fed. R. Civ. P. 17(b).................................................... 47, 50, 51

Fed. R. Civ. P. 17(b)(3)(A) ....................................... 3, 22, 32, 51

Fed. R. Civ. P. 17. .................................................................. 47

# V.    JURISDICTIONAL STATEMENT

Katelynn McLin was employed by the Twenty-First Judicial District in Lafayette, Louisiana as a Hearing Officer's Secretary.  She was fired on November 16, 2020 after a co-worker complained about a Facebook post Ms. McLin publicly shared five months earlier that satirized a group of civil rights protestors who had blocked off a portion of the local Interstate in response to George Floyd's murder.

Ms. McLin alleged she was terminated because of her race (white) in violation of Title VII and Section 1981 through Section 1983, and because of the content of her protected political speech under both the First Amendment and Louisiana state law.

Ms. McLin timely filed a Charge of Discrimination with the EEOC, and the agency issued Ms. McLin her notice of right to sue.  Ms. McLin timely filed her original complaint in the U.S. District Court for the Eastern District of Louisiana.  The district court thus had federal-question subject matter jurisdiction over Ms. McLin's federal-law claims, and supplemental jurisdiction over her state-law claims.  All defendants were timely served with summons.  No defendant challenged personal jurisdiction.

After Ms. McLin amended her complaint as a matter of course under Fed. R. Civ. P. 15(a)(1)(B), defendants filed a motion to dismiss the amended complaint under both Rule 12(b)(1) and 12(b)(6). The district court granted defendants' motion and entered final judgment dismissing all of Ms. McLin's claims on July 13, 2022. On August 10, 2022, Ms. McLin timely filed her notice of appeal challenging dismissal of each of her claims.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the district court's judgment is a final judgment of the United States District Court.

## VI.   STATEMENT OF ISSUES

1.     Whether the district court erred by determining Ms. McLin's former employer, the Twenty-First Judicial District, is not an entity capable of being sued for its own employment-based torts under Louisiana substantive law, or directly under Title VII, or as an unincorporated association under Fed. R. Civ. P. 17(b)(3)(A).

2.     Whether the district court erred by determining Ms. McLin's allegations of race-discrimination against the Twenty-First Judicial District under Title VII, and race-discrimination against Chief Judge Robert Morrison, III (retired) under 42 U.S.C. § 1981 through Section 1983, were not well-pled or plausible under the Supreme Court and this Court's controlling decisional law.  *See, e.g.*, *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) ("We reiterate, however, that a court errs by requiring a plaintiff to plead something more than the 'ultimate elements' of a [discrimination] claim").

3.     Whether the district court erred by sustaining Judge Morrison's qualified immunity defense by making dispositive findings of fact, on a motion to dismiss under Rule 12(b)(6), that were not included in the pleadings and did not arise from plaintiff's well-pled allegations.

4.    Although not reached by the district court, if this Court chooses to review the issue, whether Ms. McLin's former employer, the Twenty-First Judicial District, is more properly categorized as a Louisiana state agency or local political subdivision under Louisiana substantive law for purposes of purported Eleventh Amendment immunity from plaintiff's state law claim of employment discrimination based on political activities.

## VII.  STATEMENT OF THE CASE

Katelynn McLin was employed by Louisiana's Twenty-First Judicial District ("21st JD") as a Hearing Officer's Secretary (ROA.98). She was fired in November 2020 (ROA.98).  Ms. McLin believes she was fired because of her race (Ms. McLin is a 24-year-old white woman), and because the Chief Judge of the 21st JD disapproved of a political Facebook post Ms. McLin had shared publicly a few months prior (ROA.98).

For employment-discrimination practitioners, and likely this Court, these are not remarkable facts.  Title VII and 42 U.S.C. § 1981 prohibit employment discrimination based on race.  The First Amendment and Louisiana state law forbid employment discrimination based on protected political speech by public employees.  In reality, had Katelynn McLin sued any employer in Louisiana other than a Judicial District and its Chief Judge, this case would likely have remained a garden variety matter, one in which defendants probably would not have filed a preliminary motion to dismiss in the first place.

But Ms. McLin *was* employed by a Judicial District (ROA.98); she alleges facts that more than plausibly state a case for race and political

discrimination under federal and state law (ROA.96-123); and she did sue her former employer and Chief Judge in federal district court (ROA.96).

In response, defendants lobbed perhaps every conceivable attack possible on Ms. McLin's complaint (ROA.132-60). The district court agreed with at least some of those attacks and granted defendants' motion, dismissing Ms. McLin's case with prejudice (ROA.208-28). The upshot of defendants' arguments and the district court's opinion is as follows:

First, Louisiana's judicial districts (or their district courts as defendants would frame the issue), are now permitted to employ as many Louisiana citizens as they like, intentionally discriminate against them based on race, politics, or any other protected status, and the employers are completely immune from the reach of all federal and state anti-discrimination law because – so defendants and the district court reason – judicial districts are not juridical entities "capable of being sued" under Louisiana state law (ROA.212-15). To be sure, everyone in this case concedes that Judicial Districts (or, again, their courts) are entities capable of employing workers, paying their wages,

6

directing their work, and firing them, but not juridical enough to be held liable for illegal discrimination under federal or state law. If true, it would be hard to overstate how debilitating such a rule would be to the rights of Louisiana workers who are employed by any of Louisiana's forty-three Judicial Districts. Such a rule would effectively authorize carte blanche race, sex, religion, color, age, disability, speech, and any other form of otherwise prohibited discrimination. Such a rule would create a special class of employer in Louisiana beyond the reach of federal (or state) anti-discrimination law. Perhaps even worse, such a rule would make it trivial for the Louisiana legislature (or Louisiana courts) to make entire classes of employers immune from Title VII, Section 1981, the ADEA, the ADA, and any other federal anti-discrimination law by simply *deeming* an employer "incapable of being sued" under state law. Such a construction of the law cannot stand.

Second, defendants argued, and the district court agreed, that Ms. McLin's race discrimination claim was not well-pled because she failed to allege the existence of a comparator employee as part of her *prima facie case* (ROA.215-20). But as this Court has said many times, the existence of a *prima facie case* of disparate treatment is an evidentiary

7

standard, not an evidentiary one. *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). So, employees in our Circuit must once again wonder if they are required to plead a *prima facie case* of race or other status-based discrimination to survive a preliminary motion to dismiss or not. *Id.* at 331 ("Although Raj does not challenge the district court's interpretation of his pleading burden, we nonetheless note that a plaintiff need not make out a *prima facie case* of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim") (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)).

Third and finally, defendants argued under Federal Rule 12(b)(6), and the district court agreed, that the Chief Judge at the time, Robert Morrison, III (in his individual capacity) was shielded from Ms. McLin's claim of political-speech retaliation under the First Amendment by qualified immunity (ROA.220-25). But the district court grounded its ruling in factual findings that do not appear anywhere in the pleadings (ROA.220-25). Ms. McLin's Facebook post satirized a group of civil rights protestors who had blocked a portion of Interstate 244 near Tulsa in the wake of George Floyd's murder in 2020 (ROA.106-07). In her pleading, Ms. McLin alleged (based on her own eyewitness

8

observations) that her post was made on her own digital device, on her own time, did not identify her as a court employee, and caused zero disturbance at work until five months later when a single co-worker found the post after searching Ms. McLin's Facebook profile and complained about it (ROA.106-07).

But the district court made four separate findings of fact beyond the pleadings that were then used to sustain the Chief Judge's qualified immunity defense, reasoning the Chief Judge was objectively correct to fire Ms. McLin in the first place because "her interest in commenting on matters of public concern [did not] outweigh[] the employer's interest in promoting efficiency." *Modica v. Taylor*, 465 F.3d 174, 180 (5th Cir. 2006) (ROA.221-25). Specifically, the district court found – without any grounding in the pleadings – that Ms. McLin's post "did not contribute anything meaningful to the public discourse regarding the protestors' tactics," was "optimized to invoke outrage, and to undermine public confidence in the impartiality of the 21st JDC on the issue of protestors' tactics," "weakened workplace morale and impaired harmony among co-workers," and "jeopardized the regular operation of the 21st JDC." (ROA.221-25). If these facts were true, Ms. McLin's claim would surely

fail in the context of workplace political speech. But, at least in the context of defendants' Rule 12(b)(6) motion to dismiss, these are factual findings that appear nowhere in the record and contradict those facts pled by Ms. McLin. This case thus raises the question, is a district court permitted to look beyond the pleadings and make findings of fact for the purpose of sustaining a defendant's qualified immunity defense under Federal Rule 12(b)(6)?

The factual allegations pled in this matter giving rise to these legal issues are stated below.

\* \* \*

The Twenty-First Judicial District is created by Louisiana statute and covers Livingston, St. Helena, and Tangipahoa parishes (ROA.100). The district is comprised of many elected judges and conducts its judicial operations from three courthouses, one of which sits in Livingston parish (ROA.104). The district maintains and pays for most of its operations through a statutorily created Judicial Expense Fund (ROA.102). The district hires various staff employees to help carry out its judicial business (ROA.102-04). As alleged in plaintiff's amended complaint, the district ultimately pays the salaries of these employees

from its Judicial Expense Fund (ROA.102).  The chief executive of the district is its elected Chief Judge (ROA.102).  The Chief Judge has the power to fire the district's employees (ROA.102-04).  The Chief Judge who ultimately fired Katelynn McLin in this case is Robert Morrison, III (retired) (ROA.104).

When the district hires a new employee, it gives them an employee handbook (ROA.103).  The handbook tells the employees, for instance, that they are "at will employees" of the "21st Judicial District Court" (ROA.103).  The handbook informs the employees that their employment may be "terminated by either the Court or the employee at any time, for any reason not prohibited by law" (ROA.103).  Of particular relevance here, the handbook recites an "Equal Employment Opportunity" policy and encourages employees who suspect they have been discriminated against to contact "the Equal Employment Opportunity Commission and the Louisiana Commission on Human Rights" for the "option of pursuing a claim under state or federal law" (ROA.103).

Katelynn McLin is a white woman who was 23 years old at the time she was fired in November 2020 (ROA.99).  The district hired Ms.

McLin in 2019 as a "collector" in its collections department (ROA.99).

Ms. McLin was good at her job and she was promoted to "Hearing

Officer's Secretary" (ROA.167). She was given a raise (ROA.167). Ms.

McLin's manager, the district's Judicial Administrator Sara Brumfield,

gave Ms. McLin a letter of commendation for her efforts (ROA.99). Ms.

McLin never received written or verbal discipline prior to her

termination (ROA.99).

Chief Judge Morrison fired Ms. McLin on November 16, 2020

(ROA.99). Judge Morrison told Ms. McLin that day in his office that he

felt compelled to fire her because of a Facebook post Ms. McLin had

publicly shared five months prior that satirized protestors in the wake

of George Floyd's murder (ROA.108). The post had been unearthed by a

co-worker and reported three days earlier, on November 13 (ROA.106-

07).

The old post shared a news article at the time from the Tulsa

World newspaper website regarding protestors who blocked a local

stretch Interstate 244 (ROA.106). A motorist hauling a horse trailer

tried to maneuver through the blockade and, when protestors became

agitated, he drove through causing what the Tulsa World described as

"minor injuries" to two people (ROA.106).  Ms. McLin keeps and trains

horses, and she frequently transports them in her truck and horse

trailer (ROA.106).  She felt angry that the protestors would hold up a

horse trailer on a hot summer day, and thought the protestors' tactics

were out of line (ROA.106-07).  So she did what tens of millions of

Americans do everyday: she shared her thoughts online on social media,

quipping "All I'm going to say is that Silver Duramax enjoys pulling

that black horse trailer at 80mph 😜 #IWillrunYouOver" (ROA.106).

Describing the gist of satire to others generally ruins the point

(and that is perhaps doubly true when describing satire in the sterile

venue of a federal district or appellate court), but obviously the satire

here is that Ms. McLin did not really intend to convey that she would

run anyone over in her truck, but used the exaggeration to suggest the

protestors were wrong for blockading Interstate traffic in the first place

(ROA.106-07).  If there was any doubt about her meaning, Ms. McLin

punctuated her post in the style that has now become ubiquitous in the

age of text and social media – she posted a silly emoji with its tongue

sticking out (ROA.106).

But just as important as what Ms. McLin did with her post is what she did not do. Ms. McLin made the post on her own digital device, not on any computer equipment owned by the district (ROA.107). She made the post on her own time, not during work hours (ROA.107). She made the post in her individual capacity only, never identifying herself as an employee of the district (ROA.107).

Ms. McLin's post was never mentioned by anyone at the Livingston courthouse, any of Ms. McLin's co-workers, or any members of the public who patronize the Court until five months later when a co-worker of Ms. McLin's apparently began scrutinizing Ms. McLin's Facebook profile (ROA.106-07).

That co-worker, T.D., is a black woman who had met Ms. McLin for the first time three days before her termination at a staff luncheon at a local restaurant (ROA.104-05). She and Ms. McLin sat next to each other at lunch and exchanged pleasantries (ROA.104-05). At the end of lunch, Ms. McLin said "well, time to go back to LP [Livingston Parish] and deal with the LPians." (ROA.105). "LPians" is common slang for people that live in Livingston Parish (ROA.105). For whatever reason, T.D. perked up at the expression and asked Ms. McLin "what do you

mean, 'LPians'?" (ROA.105).  Ms. McLin replied "you know, LPians, us."
(ROA.105).

For whatever reason, as alleged in plaintiff's amended complaint,
T.D. left, looked up Ms. McLin on Facebook, and began scrolling
through her old posts (ROA.106).  T.D. found Ms. McLin's post from five
months prior and complained about it to T.D.'s immediate supervisor,
another of the 21st JD judges, Blair Edwards (ROA.106-07).  Judge
Edwards then forwarded the complaint along to Chief Judge Morrison
(ROA.107).  On November 16, 2020 – just three days after Ms. McLin
met T.D. for the first time – Judge Morrison ordered the district's
Judicial Administrator to fire Ms. McLin (ROA.107-08).  Sara Brumfield
did as she was told and brought Ms. McLin to her office (ROA.108).  Ms.
Brumfield explained that she had been ordered by Judge Morrison to
fire Ms. McLin because of her Facebook post and comment about
"LPians." (ROA.108).  Ms. Brumfield told Ms. McLin "I hate having to
do this" but she "had no choice" and her "hands were tied." (ROA.108).

Ms. McLin asked to speak with the Chief Judge, and Ms.
Brumfield allowed her to walk across the hallway to talk with Judge
Morrison (ROA.108).  There, Judge Morrison candidly told Ms. McLin

the following: "In today's world that we live in, I have no other choice but to terminate you. You need to watch what you say and do." (ROA.108). In context, and based on his tone and demeanor, Ms. McLin understood Judge Morrison meant that he felt compelled to fire Ms. McLin given the overall facts of the matter: she was a white woman, who posted a critical view of civil rights protestors in the wake of George Floyd's murder, and a co-worker, who was black, complained about the post (ROA.108). Implicit in his words, at least to Ms. McLin's perception, was that she would not have been fired if she had offered the same critique but was a race other than white, nor would she have been fired if Ms. McLin, as a white woman, had posted a political view supporting the protestors at issue (ROA.108-09). These are not lawyerly post hoc arguments made to fill out a scant complaint. These are the facts that Ms. McLin herself alleged in her verified First Amended, Restated, and Superseding Complaint (ROA.107-09).

Later, at the time Ms. McLin filed her EEOC Charge of Discrimination and her federal complaint, she did not know whether anyone at the district had also made online political comments about the protests that had happened nationwide that summer, but Ms.

McLin did know that at least some district employees had endorsed local political candidates in apparent violation of the district's "no endorsements" policies (ROA.110). Ms. McLin's understanding is that one of those employees was T.D. herself (ROA.110). Ms. McLin's understanding is that T.D. had not been disciplined for the political endorsements (ROA.110). Ms. McLin included those allegations in her complaint as well (ROA.110).

\* \* \*

Based on those facts, plaintiff's amended complaint asserted four causes of action against the defendants:

a.  Disparate-treatment discrimination based on race under Title VII against the 21st Judicial District (ROA.113-16),

b.  Disparate treatment discrimination based on race under 42 U.S.C. § 1981 through 1983 against Chief Judge Morrison solely in his individual capacity (ROA.116-18),

c.  Disparate treatment discrimination based on political activities and affiliations under La. Rev. Stat. Ann. § 23:961 against the 21st Judicial District (ROA.118-19), and,

    d.    Disparate treatment discrimination based on political speech under the First Amendment through Section 1983 against Chief Judge Morrison solely in his official capacity (ROA.119-22).

Defendants filed a motion to dismiss all of plaintiff's claims under Federal Rules 12(b)(1) and 12(b)(6), making the arguments highlighted supra (ROA.132-60). Highlighting those arguments, defendants first argued the district court lacked subject matter jurisdiction because plaintiff should have named the Twenty-First Judicial District Court instead of the Twenty-First Judicial District (ROA.145-49). Defendants argued that the District is a political boundary, and the Court was the juridical entity that employed Ms. McLin (ROA.145-48). Defendants then argued that Louisiana's federal district courts which had considered other, non-employment cases against Louisiana state district courts had held the "courts" were not entities capable of being sued under Louisiana substantive law (ROA.145-48). In the alternative, defendants also argued the 21st JD Court was not a political subdivision, but an arm of Louisiana, protected from suit in federal court by Eleventh Amendment Immunity (ROA.148-49).

18

Defendants next argued that Chief Judge Morrison was entitled to qualified immunity on both plaintiff's claims of race discrimination and political-speech discrimination (ROA.150-51). Defendants argued in the alternative that plaintiff's allegations of race discrimination were not "plausible" under Twombly because plaintiff "fails to allege that similarly situated employees received more favorable treatment for the same conduct, which she concedes is an essential element of her claim . . . [and] has not pled the elements of a Title VII claim against the 21st JDC." (ROA.155-59).

Plaintiff opposed each of these points (ROA.165-89). First, plaintiff argued that Louisiana statute created the Twenty-First Judicial District, and that Districts are defined as "political subdivisions" capable of being sued under Louisiana state law (ROA.171-80). In the same way that the proper defendant is not the Sheriff's Office, but the Sheriff; not the District Attorney's Office, but the District Attorney; not the Fire Department, but the Fire District; not the Hospital, but the Hospital District, plaintiff argued the proper defendant was, in fact, the 21st Judicial District (ROA.180-83). But plaintiff also argued her complaint should be construed as naming the

real party in interest – her employer – regardless of whether the district court determined that entity was the Judicial District or Judicial District Court (ROA.166 at n. 1). In other words, plaintiff argued the substance of the issues remained the same regardless of whether Louisiana law regards the suable entity as the District or the District Court (ROA.165-83).

In any event, plaintiff argued that Louisiana state courts had never apparently decided whether a Judicial District was capable of being sued for its own employment torts, and that context was necessary under the Louisiana Supreme Court's test for determining whether a governmental entity is capable of being sued for "that particular purpose" set out in *Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So.2d 341 (La. 1994) (ROA.171-74). Under the *Roberts* test, plaintiff argued that the 21st JD had all the traditional hallmarks of a juridical entity "for the purpose" of being sued for employment discrimination: it was created by statute, it maintained and operated its own expense fund, it organized and supervised its own affairs, it hired employees to carry out its work, it promulgated its own policies, including EEO and anti-discrimination policies, and it encouraged

employees who believed they had been illegally discriminated against to file a Charge of Discrimination against the entity with the EEOC or Louisiana Commission on Human Rights (ROA.171-76).

But more basic than that, plaintiff argued the obvious point that if the 21st JD had the juridical capability to contract for employment, then it had the juridical capability to be sued for illegal discrimination arising from that employment (ROA.174).

Plaintiff also argued that even if Louisiana substantive law did not regard judicial districts (or district courts) as entities capable of being sued, such a construction impermissibly conflicted with Title VII's express mandate that all "governmental units" and "political subdivisions" were "persons" liable for illegal, status-based discrimination (ROA.178).  To the extent Louisiana law regarded any covered "person" as "incapable of being sued" as a matter of state law, such law is preempted by Title VII (ROA.178-79).  Although defendants filed a reply brief in response to plaintiff's opposition brief, defendants never addressed this Supremacy Clause issue (ROA.193-202).  The district court did not reach the issue either, instead holding that

plaintiff's claims of race discrimination were not plausibly pled (ROA.208-27).

Finally, regarding the judicial district's capability of being sued, plaintiff had alternatively pled in her amended complaint that, at the very least, the elected judges of the 21st JD constituted an "unincorporated association" that had employed Ms. McLin, and that under Federal Rule 17(b)(3)(A) the unincorporated association was capable of being sued in its own name regardless of Louisiana law (ROA.179-80).

Plaintiff next argued that Louisiana statue defined both Districts and Judicial Districts as "political subdivisions," and that this Court had long held Louisiana's political subdivisions are not shielded by Eleventh Amendment immunity (ROA.180-83). In its opinion, the district court did not reach this issue either, holding instead that the 21st JD was not capable of being sued in the first place (ROA.213-15).

Regarding Chief Judge Morrison, plaintiff argued that – at least in the context of a preliminary motion to dismiss – the facts alleged precluded qualified immunity for either plaintiff's claim of intentional race discrimination or political-speech retaliation (ROA.183-87).

Employment discrimination based on race under Title VII and Section 1981, as well as political discrimination under the First Amendment, have long been held illegal by this Court. Defendant could not cite to any case from this Circuit wherein a public official successfully asserted qualified immunity in a race discrimination or political-speech discrimination case, whereas cases do exist from this Court wherein public officials had been held liable for those sorts of employment-based torts (ROA.185). For instance, this Court has specifically rejected a state official's qualified immunity defense against a claim of disparate treatment retaliation under Section 1981. *Foley v. Univ. of Houston Sys.,* 355 F.3d 333, 340 (5th Cir. 2003). This Court has also rejected a state official's claim of qualified immunity in a First Amendment speech retaliation case under Section 1983. *Modica v. Taylor,* 465 F.3d 174, 183 (5th Cir. 2006).

Finally, plaintiff argued defendants' attack under *Twombly* lacked merit because both the Supreme Court and this Court had already held that an employment discrimination plaintiff is not required to plead a prima facie case for race discrimination under federal law, and even if that were not the case for political-speech discrimination under the

First Amendment, plaintiff had alleged a complete prima facie case

there anyway (ROA.187-89). *See e.g., Raj v. Louisiana State Univ.,* 714

F.3d 322, 331 (5th Cir. 2013).

In other words, despite framing the issue under Twombly,

defendants' arguments were really an attack on the Supreme Court and

this Court's prior holdings that a prima facie case in the employment

discrimination context is an evidentiary standard, not a pleading

requirement (ROA.187-89). *See Swierkiewicz v. Sorema N.A.,* 534 U.S.

506, 510-12 (2002) ("The prima facie case under McDonnell Douglas,

however, is an evidentiary standard, not a pleading requirement").

More fundamentally, plaintiff argued that there was not much

more Ms. McLin could allege to "plausibly" state a claim for race and

political-speech discrimination (ROA.188-89). Ms. McLin pled all the

allegations she knew or had good-faith reason to believe to be true. Ms.

McLin was a good worker who gave no believable reason for her

employer to fire her but-for her protected status or activities (ROA.188-

89). Ms. McLin alleged in her verified, amended complaint that she

understood Chief Judge Morrison's comments to her on the day of her

termination as an implicit admission of liability – that, given his tone

and the context of the matter, Judge Morrison conceded he would not have felt compelled to terminate Ms. McLin for her Facebook post but-for her race, or but-for the content of the speech (ROA.107-10). Ms. McLin also alleged that others within the office, including T.D., had made political endorsements in violation of the 21st JD's policies but had not apparently been disciplined for it (ROA.110). In reality, Ms. McLin's well-pled allegations are more appropriately cast as alleging direct evidence of discrimination, rather than merely a circumstantial case, and are certainly well-pled from the perspective of plausibility.

Nevertheless, the district court ruled in favor of defendants, granted their motion to dismiss, and entered final judgment dismissing Ms. McLin's case with prejudice (ROA.208-28). The district court decided that whether framed as the 21st Judicial District or Judicial District Court, the entity at issue was not capable of being sued under Louisiana state law consistent with the prior federal district court decisions in non-employment cases on that point (ROA.213-15). Because the district court held the 21st JD was not capable of being sued, it did not consider defendants' Eleventh Amendment immunity defense (ROA.214-15). And because the district court held Ms. McLin's

race-discrimination claim (against both the District and the Chief Judge) was not plausibly pled based on a failure to plead the existence of a similarly situated comparator, it did not reach plaintiff's Supremacy Clause argument or Judge Morrison's qualified immunity defense on that claim (ROA.215-20).

Finally, however, the district court did sustain Chief Judge Morrison's qualified immunity defense regarding plaintiff's political-speech claim (ROA.220-25). The district court concluded that plaintiff "cannot show that her interest in a crude Facebook post outweighed Judge Morrison's constitutional duty to ensure the fair, impartial, and efficient administration of justice within the 21st JDC." (ROA.225). The district court reached this conclusion by making several findings of fact described supra, none of which were alleged in the pleadings (ROA.220-25).

This appeal followed (ROA.231-32).

## VIII. SUMMARY OF THE ARGUMENT

Katelynn McLin sued her former employer, the Twenty-First Judicial District, for race discrimination under Title VII and political discrimination under Louisiana state law.  She also sued the decision-maker, Chief Judge Morrison (retired), for race-discrimination under Section 1981/1983, and for political-speech retaliation under the First Amendment and Section 1983.  The defendants moved to dismiss Ms. McLin's claims, and the district court granted the motion.

The defendants first argue the correct name of Ms. McLin's former employer is the Twenty-First Judicial District *Court*.  Regardless of the name, the threshold debate is whether a Louisiana Judicial *District* (or District *Court*) is an entity capable of being sued for its own employment-based torts.  The district court below held it could not.  The leading case from the Louisiana Supreme Court is *Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So.2d 341 (La. 1994), which requires a functional analysis of a government entity to determine whether it can be sued for "a particular purpose."  This implies an entity may be capable of being sued for one purpose, but not for another.

Defendants marshal many cases standing for the proposition that a Louisiana judicial district is not capable of being sued by third-parties in non-employment cases, but the case that most resembles the facts here is *Griffith v. City of New Orleans*, CIV.A. 11-245, 2013 WL 2555787, at *1 (E.D. La. June 10, 2013), wherein the Eastern District of Louisiana held a former clerk could sue her former employer, the Orleans Parish Juvenile Court, in its own name, under Title VII. Further, under Louisiana substantive law, "districts" are defined as "political subdivisions" capable of being sued. La. Rev. Stat. Ann. § 13:5102(B)(1). In at least one instance, Louisiana statute expressly defines a "judicial district" as a "political subdivision." La. Rev. Stat. Ann. § 49:308(F). The Twenty-First Judicial District (whether called the *District* or the District *Court*) held itself out as Ms. McLin's employer; it contracted for her employment; it ultimately paid her wages; and it fired her. If the District had the juridical capacity to contract for employment, it has the juridical capacity to be held liable for its own employment-based torts.

The defendants also argued, and the district court agreed, that Ms. McLin's claims for race-discrimination against her employer and

Judge Morrison were not well-pled under *Twombly*.  But this appeared to really assert Ms. McLin was required to plead a *prima facie case* of disparate-treatment discrimination under the *McDonnell Douglas* framework, which this Court has repeatedly rejected.  *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019).  In reality, Ms. McLin's factual allegations were well-pled because she plausibly states the two essential elements of her case: that she was fired, and she was fired because of her race.  *Id.* at 767.

Finally, the district court sustained Judge Morrison's qualified immunity defense against Ms. McLin's political-speech retaliation claim.  The district court did so by making several dispositive factual findings that did not appear anywhere in the pleadings or which arose from plaintiff's well-pled allegations.  Essentially, the district court found that Ms. McLin's Facebook post from five months earlier "weakened workplace moral" and "jeopardized the regular operation of the 21st JDC."  But those facts are not in the pleadings, and Ms. McLin actually alleged the opposite – that her post had zero effect on anything or anyone for five months until a co-worker apparently found the post after searching through Ms. McLin's social media history and

complained.  In the context of a motion to dismiss under Rule 12(b)(6), even notwithstanding the defense of qualified immunity, the district court must still accept the plaintiff's well-pled allegations as true.

On these facts, in the context of defendants' motion to dismiss under Rule 12, and based on the law at issue, the district court erred by dismissing plaintiff's claims, and the judgment of the district court should be reversed.

# IX. ARGUMENT

A. *This Court Reviews the District Court's Order and Reasons de Novo*

Defendants moved to dismiss Ms. McLin's claims against them under both Federal Rule 12(b)(1) and 12(b)(6). Under either rule, this Court reviews the district court's decision *de novo*, applying the same standard applicable to a district court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (so holding).

Under Rule 12(b)(1), "a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

Under Rule 12(b)(6), The "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramming*, 281 F.3d at 161 (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

B.    *The Twenty-First Judicial District Employed Ms. McLin and Remains Liable to Her under Title VII for Intentional Race Discrimination*

Ms. McLin sued her former employer as the "Twenty-First Judicial District." Defendants counter that the more appropriately named defendant is the "Twenty-First Judicial District Court." For purposes here, plaintiff respectfully suggests that is an argument without much relevance because, first, these are really the same entity, and, second, if this Court were to find the Judicial District *Court* was capable of being sued based on the merits arguments below, but not the Judicial *District*, plaintiff repeats her request originally made to the district court for leave to amend her complaint to make that change.

On the merits, either named as the Judicial *District* or Judicial District *Court*, the entity that employed Ms. McLin must remain liable to her under Title VII whether as a function of Louisiana substantive law, Title VII directly through the Supremacy Clause, or as an "unincorporated association" under Federal Rule of Civil Procedure 17(b)(3)(A).

*1.    The 21st JD is a Statutorily Created Governmental Unit and Political Subdivision*

Understanding whether Louisiana substantive law or Title VII applies to the 21st JD requires an understanding of the nature of the entity. Unquestionably, the "Twenty-First Judicial District" is an entity created by Louisiana statute. *See* La. Rev. Stat. Ann. § 13:477(21) (providing that "[t]here shall be forty-one judicial districts in the state and each district shall be composed as follows . . . [t]he parishes of Tangipahoa, Livingston, and St. Helena shall compose the Twenty-First District"). The 21st JD is statutorily responsible for carrying out the Louisiana constitutional duties of the district court located within the district. *See* LA. CONST. art. 5 § 14 (providing that "[t]he state shall be divided into *judicial districts*, each composed of at least one parish and served by at least one district judge") (emphasis added).

Additionally, judicial districts are expressly recognized as "political subdivisions" under Louisiana statute. *See* La. Rev. Stat. Ann. § 49:308(F) (providing that "'Political subdivision' as used in . . . this Section [related to the deposit of revenues received from governmental entities into the state treasury] means any judicial circuit, ***judicial district***, office of public defender within a judicial

district . . . or any other unit of local government, including a special district authorized by law to perform governmental functions") (emphasis added). Although Section 49:308 is an admittedly niche revenue statute, the Louisiana legislature's explicit decision to define a "judicial district" as a "political subdivision" is perhaps dispositive to the issue.

Otherwise, Louisiana's Governmental Claims Act – which permits citizens to sue Louisiana state agencies and political subdivisions in tort or contract – again defines "political subdivision" to include any "district." La. Rev. Stat. Ann. § 13:5102(B)(1)

Louisiana statute also defines the entity that pays the person their wages and benefits from their work as that person's "employer" liable under the Louisiana Employment Discrimination Law, including any "political subdivision." *See* La. Rev. Stat. Ann. § 23:302(2) (defining "employer" as, among other things, a "political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee").

Admittedly, there is an apparent dearth of reported Louisiana state law cases in which a plaintiff has sued either a Judicial District or

Judicial District Court for employment based torts.  But the idea that a
governmental "district" is a juridical, political subdivision is otherwise
unremarkable under Louisiana law.  For instance, Louisiana's so-called
"Fire Protection Districts" are juridical "districts" created by Louisiana
statute.  La. Rev. Stat. Ann. § 40:1491 (so providing).  These districts
are expressly capable of suing and being sued in their own name. La.
Rev. Stat. Ann. § 40:1500(A).  Another example are Louisiana's
"Hospital Service Districts" which likewise have been recognized as
juridical entities capable suing and being sued.  *See Morice v. Hosp.
Serv. Dist. #3*, 430 F.Supp.3d 182, 199 (E.D. La. 2019) (citing La. Rev.
Stat. Ann. § 46:1060).  Plaintiff's argument that judicial district are
political subdivisions under Louisiana state law remains consistent
with Louisiana's statutory framework.  Defendants' arguments that the
districts are not political subdivisions appears inconsistent with
Louisiana state law.

2.  *The 21st JD Is Capable of Being Sued for Employment Torts
under a Roberts-style Analysis*

Plaintiff, defendants, and the district court were each correct to
analyze the question of whether the 21st JD may be sued for its own
employment torts within the framework of the Louisiana Supreme

Court's decision in *Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So.2d 341 (La. 1994). In *Roberts*, plaintiff was a New Orleans police officer who sued the Sewerage and Water Board of New Orleans ("SWB") in tort after he hurt himself on an open manhole cover. *Id.* at 342. SWB filed an exception of no cause of action arguing that it was not a juridical entity separate from the City of New Orleans and thus could not be sued under Louisiana's worker's compensation statute. The question before the Louisiana Supreme Court was whether the SWB was a separate juridical entity capable of being sued by Roberts in tort.

The Supreme Court held the SWB was capable of being sued in tort because "[l]ocal government units such as the SWB are generally treated as separate and distinct public juridical persons or corporations for certain purposes whether they are called that or not." *Id.* at 346. Specifically, the Supreme Court stated the general rule that unless some "positive law" prohibits suing a governmental entity for a particular purpose, a plaintiff may properly sue that entity in its own name when the "organic law" confers operational independence to the entity:

The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made *in each particular case* is whether the entity can appropriately be regarded as *an additional and separate government unit for the particular purpose at issue.* In the *absence of positive law to the contrary*, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the *organic law grants it the legal capacity to function independently* and not just as the agency or division of another governmental entity.

*Roberts*, 634 So. 346-47.

Critically, the *Roberts* court held the dispositive question is "specifically what the entity is legally empowered to do," and that under this "functional approach" Louisiana courts "have found cities and various other kinds of local government entities to be independent and autonomous, having juridical personality." *Id.* at 347. Using its fact-specific, functional approach, the *Roberts* court held that SWB was capable of being sued in tort considering that SWB was "an autonomous or self-governing entity" and possessed "virtual plenary legal authority to manage, direct and control all aspects and operations of its public utility system":

> [W]e conclude that the SWB is an autonomous or self-governing legal entity with respect to the management of its business [and] . . . is legally independent of the City, state and other governments in its source of revenues; the employment, deployment, direction and control of its work force; and the comprehensive management of its public utility operations . . . .  The SWB is . . . authorized to elect an executive director, fix the director's salary and discharge the director at is pleasure.  The SWB is similarly authorized with respect to the employment of a general superintendent.

*Id.* at 347-48.

Plaintiff, defendants, and the district court each tried to answer the question under *Roberts*, but correct answer must surely be that the 21st JD is an independent entity capable of being sued *at least for the purpose* of employment-based torts.  The 21st JD independently operates, hires employees, pays them, fires them, promulgates employment policies for them, and so on and so forth.  The most important holding from *Roberts* is that Louisiana law might confer upon a political subdivision the capacity to be sued for one thing, but not another.

So, plaintiff acknowledges several federal district court decisions holding that a judicial district (court), including the 21st Judicial District Court, does not have capacity to be sued under Louisiana state law in various sorts of non-employment cases.  *See, e.g.*, *Rutherford v.*

*Louisiana*, CIV.A. 10-1987, 2011 WL 692031, at \*5 (E.D. La. Feb. 17, 2011) (dismissing § 1983 claim against the 21st Judicial District Court); *Green v. Dist. Attorney Office*, Civ. Action No. 08–3685, 2009 WL 651132, at \*5 (E.D.La. Mar. 10, 2009) (dismissing § 1983 claims against Orleans Parish Criminal District Court); *Ormond v. Louisiana*, CIV. A. 09-7202, 2009 WL 6419040, at \*1 (E.D. La. Dec. 22, 2009) (dismissing § 1983 claims against Louisiana Fifth Circuit Court of Appeal); *Laugand v. Bank of New York Mellon*, CV 17-00083, 2017 WL 4276474, at \*2 (M.D. La. Sept. 26, 2017) (dismissing § 1983 and other claims against the 19th Judicial District Court). But, again, these cases are distinguishable from the present case because, under a *Roberts* style analysis, these cases did not concern whether a Judicial District had capacity to be sued *for the purpose* of employment-based torts.

Under Louisiana substantive law, the "employer-employee relationship is a contractual relationship." *Quebedeaux v. Dow Chem. Co.*, 2001-2297, 4 (La. 6/21/02), 820 So. 2d 542, 545. The 21st JD expressly informed Ms. McLin in its employment handbook that she was an "at-will" employee of the court. So-called "at-will" employment is "merely a gap-filler, a judicially created presumption utilized when

parties to an employment contract are silent as to duration." *Id.*
Regardless of how defendants argue the point, or how the district court
framed the issue, the fact remains that the 21st JD apparently had the
juridical capacity to *contract* for Ms. McLin's employment. And,
assuming so, it must have the capacity to be held *liable* for its
*employment-based torts* arising from that contract under Louisiana
substantive law. This construction of the law remains consistent with
Louisiana statute expressly permitting "districts" to be sued as
"political subdivisions" in contract or tort. La. Rev. Stat. Ann. § 13:5101
*et seq.* It remains consistent with the Louisiana legislature, at least in
once instance, expressly defining a "judicial district" as a "political
subdivision" under state law. La. Rev. Stat. Ann. § 49:308(F). It
remains consistent with the well-understood feature of Louisiana law
permitting, for example, suits against Fire Protection Districts,
Hospital Service Districts, and so on.

3.    *At Least One Louisiana State Court Has Been Successfully
      Sued under Title VII in the Eastern District of Louisiana*

There is an apparent dearth of reported cases concerning court
employees suing their judicial employers under Title VII or Section
1983. Nevertheless, one case is close to on all fours with the arguments

raised in this case, *Griffith v. City of New Orleans*, CIV.A. 11-245, 2013 WL 2555787, at *1 (E.D. La. June 10, 2013) ("*Griffith II*").  After a lengthy discussion of the law of Title VII as applied to judicial employers in Louisiana, the Eastern District of Louisiana permitted a judicial clerk employed by the Orleans Parish Juvenile Court to sue the OPJC under Title VII for various employment claims.  *Griffith II*, 2013 WL 2555787, at *7. The reasoning in *Griffith II* is persuasive and should (mostly) be applied in this case to permit Ms. McLin's causes of action against the 21st JD under at least Title VII.

Griffith was employed as the "Orleans Parish Juvenile Court Fiscal Manager."  Griffith alleged she was sexually harassed by (former) OPJC Judge David Bell and, later, allegedly terminated because she complained and filed an EEOC Charge against Judge Bell about that sexual harassment.  *Griffith v. Louisiana*, 808 F.Supp.2d 926, 930-931 (E.D. La. 2011) ("*Griffith I*").  Griffith sued multiple entities under Title VII, Section 1983, and Louisiana state law, including the State of Louisiana, the OPJC, and multiple of the OPJC judges.  *Griffith I*, 808 F.Supp.2d at 932-33.  On a preliminary motion to dismiss, and relevant here, Judge Berrigan of the Eastern District of Louisiana dismissed

Griffith's Title VII claims against the OPJC because, so the court reasoned, it "lacks capacity to be sued." *Id.* at 933. Judge Berrigan so ruled for essentially the same reasons argued by defendants in this case and agreed upon by the district court.

Later, in *Griffith II*, the case had been reallotted to Judge Zainey. Griffith and a co-plaintiff filed motions to reconsider the prior dismissal of some of their claims, including their Title VII claim against the OPJC. *Griffith II*, 2013 WL 255787, at *1. A principal question on reconsideration was the identity of Griffith's employer for purposes of Title VII liability. In the case of the OPJC, the City of New Orleans (not the court) paid Griffith's salary, which meant for purposes of the LEDL the OPJC did not meet the definition of "employer;" but, insofar as the OPJC clearly controlled all aspects of Griffith's work, the City of New Orleans could not be Griffith's employer for purposes of Title VII. *See Griffith II* at *2-6. This seemingly left Griffith with no legal employer to sue for otherwise illegal sexual harassment and retaliatory discharge under either Title VII or Louisiana state law.

In response, Judge Zainey ruled that "given the broad, remedial nature of Title VII, Plaintiffs do in fact have a Title VII employer[,]" and

that employer was the "State in one of its many forms—either the State of Louisiana, or if not the State proper, the OPJC, as an agency of the State of Louisiana, which it unarguably is, or the judges of the OPJC in their official capacities." *Id.* at *6.

*Griffith II* stands for the proposition that, push comes to shove, a judicial employee in Louisiana has a cause of action against her judicial employer under Title VII. Judge Zainey reasoned that the OPJC could be sued, apparently in its proper name, as an agency of the State. Here, plaintiff would argue that for the reasons discussed *supra*, the Twenty-First Judicial District (either in that proper name, or as defendants would frame it the Twenty-First Judicial District *Court*) is likewise capable of being sued in its own name under Title VII, albeit as a local political subdivision.

On this final point, the Louisiana Supreme Court has held, at least for purposes of the LEDL, that a clerk employed by the Orleans Parish Civil District Court is not an "employee of the State" because the State did not pay her salary. *Dejoie v. Medley*, 2008-2223, p. 4-10 (La. 5/5/09); 9 So.3d 826, 828-32 (discussing the matter at length). The plaintiff in *Dejoie* appears to have sued the State *through* the Civil

43

District Court, as opposed to the Civil District Court directly. *See Dejoie v. Medley*, 43,448, p. 1 (La. App. 2 Cir. 8/13/08); 990 So.2d 1291, 1292. And so the Louisiana Supreme Court did not apparently take up the question of whether, for purposes of employment-based torts, judicial districts (or judicial district courts) are political subdivisions are not.

However, one clue in *Dejoie* is the Supreme Court's determination that money collected by the Civil District Court in its Judicial Expense Fund was *not* funds of the State under La. Rev. Stat. Ann. § 49:308(F). *Dejoie*, 9 So.3d at 831. That is the same niche revenue statute discussed in this brief *supra*, providing that a "judicial district" is defined as a "political subdivision" under Louisiana law. In *Dejoie*, the Louisiana Supreme Court held this was dispositive enough for purposes of determining that the plaintiff was not a State employee. The natural, albeit unsaid, conclusion is that the plaintiff was instead an employee of a political subdivision, the Civil District Court.

In any event, in this case, and for much the same reasons discussed in *Griffith II*, Ms. McLin respectfully suggests she was an employee – at least for Title VII purposes – of the 21st JD, and she

properly sued the 21st JD for that purpose in its own name. To the

extent this Court were to find that Ms. McLin improperly named her

employer as the Judicial *District* instead of the Judicial District *Court*,

Ms. McLin would repeat her request for leave to amend her amended

complaint to make that nominal change. To the extent this Court were

to find that Ms. McLin's cause of action is actually one against the State

of Louisiana *through* the Judicial District or District Court, plaintiff

would again respectfully ask for leave to amend to make that nominal

change.

4. *Federal Law Does Not Permit Louisiana to Regard Bona Fide Employers as Beyond the Reach of Title VII for Their Own Illegal Discrimination*

During the proceedings below, plaintiff argued that because the

21st JD was Ms. McLin's "employer," Title VII provided Ms. McLin a

cause of action against it, and any interpretation of Louisiana state law

that deemed Ms. McLin's "employer" as "incapable of being sued" was

really an attempt at using state law to trump controlling federal law, in

violation of the Supremacy Clause of the Constitution. Defendants did

not respond to this argument in their reply brief below. The district

court briefly addressed the argument in a footnote in its written

reasons, but did not decide the issue, instead determining that Ms.
McLin failed to "plausibly" state a claim for race discrimination.

If this Court were to find that the 21st JD was Ms. McLin's
employer, but for whatever reason lacked capacity to be sued, plaintiff
re-urges this argument again.

The "Laws of the United States . . . shall be the supreme Law of
the Land; and the Judges in every State shall be bound thereby, any
Thing in the Constitution or Laws of any State to the Contrary
Notwithstanding." U.S. CONST. Art. VI, cl. 2. The Constitution's
Supremacy Clause gives rise to the doctrine of preemption. Relevant
here, "[i]n those areas where Congress has not completely displaced
state regulation, federal law may nonetheless pre-empt state law to the
extent it actually conflicts with federal law." *California Fed. Sav. &
Loan Ass'n v. Guerra*, 479 U.S. 272, 281 (1987). "Such a conflict occurs
either because compliance with both federal and state regulations is a
physical impossibility, or because the state law stands 'as an obstacle to
the accomplishment and execution of the full purposes and objectives of
Congress.'" *Id.* (internal quotations and citations omitted).

Plaintiff's argument here is straightforward.  Title VII defines a covered "employer" (relevant to this case) to include "governments, governmental agencies, [and] political subdivisions."  If the 21st JD is Ms. McLin's employer – and all the well-pled allegations in this case suggest that is – then Louisiana cannot deem otherwise covered employers to be "incapable of being sued" under Title VII.  Otherwise, Louisiana (and every other state) could pick and choose which employers were liable under Title VII and which were not simply by deeming them to be incapable of suit.

The district court correctly pointed out that Fed. R. Civ. P. 17(b) expressly provides that the law of the forum state generally determines a party's capacity to sue or be sued.  Plaintiff acknowledges this.  But it seems Federal Rule 17 should not be read to provide states a loophole to liability under Title VII or any other federal statute simply by deeming the otherwise liable entity as "incapable" of being sued under state law.

In Title VII, Congress explicitly singled out governmental employers, including state agencies and political subdivisions, as covered employers directly liable for their own intentional discrimination.  If Louisiana state law confers sufficient juridical

personality on the 21st JD to *contract* for Ms. McLin's employment, actually employ her, direct her work, pay her, and fire her, Louisiana substantive law should not be allowed to be construed in a way that nevertheless deprives an employee the procedural ability to sue that covered employer on the supposed basis of "lack of capacity."

Plaintiff cannot find much case law on the intersection of Title VII and capacity from perspective of preemption. However, this Court did at least discuss the matter in *Darby v. Pasadena Police Dep't,* 939 F.2d 311, 313 (5th Cir. 1991). There, the plaintiff alleged he was employed as a police officer by the Pasadena Police Department. But, under Texas law, the district court determined the proper defendant was the City of Pasadena, and the Pasadena Police Department was not a separate entity capable of being sued. *Id.* at 313-14. This Court agreed and held Darby named the wrong defendant in this lawsuit. Darby contended on appeal, however, that Title VII *conferred* capacity on all otherwise covered employers as a matter of federal law. *Id.* at 314. This Court disagreed, but in so doing couched its decision in the reality that a proper defendant under Texas was readily available – the City of Pasadena:

48

> In short, Title VII grants Darby a cause of action. It does not, however, override Pasadena's decision that all cases, Title VII or otherwise, proceed against it as a corporate entity. Darby should have pursued his same cause of action against the entity that Pasadena *designated as responsible for all city lawsuits*. Title VII contains nothing to change this.

*Id.* at 313  (emphasis added).

Left unresolved in *Darby* (and frankly many of the cases that hold a purported employer lacks capacity to be sued) was the issue raised here and in *Griffith II*: what remedy does Title VII afford a plaintiff when state law apparently provides *no* employer-entity capable of being sued?

Again, in this case, defendants have not urged a viable employer-entity to sue other than the 21st Judicial District.  Defendants suggest only that the 21st Judicial District is no entity at all under Louisiana law, and that the real entity – the 21st Judicial District *Court* – lacks capacity to be sued in the first place.  Judge Zainey in *Griffith II* solved this dilemma by permitting suit under Title VII against the OPJC to proceed forward, reasoning that the OPJC was an agency of the State. The Louisiana Supreme Court's decision in *Dejoie* seems to tack against that conclusion.   Ms. McLin argues that *Griffith II* was mostly correct, except that the 21st JD is more properly regarded as a political

subdivision under Louisiana state law, consistent with state statue and the implicit holding of *Dejoie*.

But if this Court rejects both views, then Ms. McLin is left with no employer for purposes of Title VII at all, and all because Louisiana substantive law has simply regarded her bona fide employer as not capable of being sued. Surely neither Title VII nor Federal Rule 17(b) contemplated such a contrivance.

In *Griffith II*, Judge Zainey determined that Title VII, given its remedial purpose, provided a suable employer for the plaintiff. Here, Ms. McLin argues similarly, but instead of grounding that result in Title VII's remedial nature, plaintiff suggests that where Congress specifically names an entity for which liability attaches under a federal statute (in this case, covered employers under Title VII, like the 21st JD), substantive state law cannot avoid that federal liability merely be deeming an otherwise bona fide entity as "incapable of being sued." To the extent this conclusion is reached under a supremacy argument, versus a "conferring capacity" argument, this Court's decision in *Darby* remains undisturbed.

5.  *Alternatively, Federal Rule 17(b) Expressly Permits Ms. McLin to Sue Her Employer as an "Unincorporated Association"*

In her amended complaint, Ms. McLin alleged, in the alternative, that her employer was the unincorporated association of elected judges serving the 21st JD.  Title VII likewise permits suit against "unincorporated organizations," 42 U.S.C. § 2000e(a), and Fed. R. Civ. P. 17(b)(3)(A) permits suit against an "unincorporated association with no such capacity under that state's law" to "enforce a substantive right existing under the United States Constitution or law."  Defendants only briefly responded to this alternative argument below, and the district court did not apparently discuss the issue in its opinion.

If this Court were to find that the 21st JD was not capable of being sued regardless of any other state or federal law, then Ms. McLin at least urges that she be allowed to proceed in her suit against her employer, which in the absence of any other formality, must at least be considered the unincorporated association of elected judges of the Twenty-First Judicial District Court.

6.    *If the 21st JD Is a Political Subdivision, then Eleventh Amendment Immunity Does Not Apply*

Both plaintiff and defendants brief the issue of whether the 21st JD enjoyed Eleventh Amendment immunity from suit in federal court against Ms. McLin's state-law political discrimination claim under La. Rev. Stat. Ann. § 23:961. The district court did not reach the issue, instead determining that the 21st JD had no capacity to be sued in the first place.

Plaintiff and defendants seem to agree at least on the dispositive issue immunity: assuming the 21st JD is capable of being sued as Ms. McLin's employer, is it a state agency ordinarily entitled to Eleventh Amendment immunity, or is it a political subdivision not generally entitled? *See Porche v. St. Tammany Par. Sheriff's Office*, 67 F.Supp.2d 631, 632 (E.D. La. 1999) ("While the Eleventh Amendment immunizes "state agencies that may be properly characterized as arms of the State," the "Eleventh Amendment affords no protection to local government entities and employees"); *see also Hudson v. City of New Orleans*, 174 F.3d 677, 679 (5th Cir. 1999) (analyzing issue using multi-factor test). Under this framework, courts in our Circuit have held the office of sheriff is a political subdivision not protected by the Eleventh

Amendment. *Porche*, 67 F.Supp.2d at 632. The office of district attorney is likewise a political subdivision not afforded immunity. *Hudson*, 174 F.3d at 679. The same is true for local Port Commissions. *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 436 (5th Cir. 1985).

For all the reasons discussed *supra*, plaintiff asserts the more consistent view under Louisiana state law is to regard the 21st JD as a political subdivision rather than a state agency. Assuming so, the 21st JD has no Eleventh Amendment immunity against Ms. McLin's state law political-discrimination claim.

B.   *Chief Judge Morrison Fired Ms. McLin and Remains Liable to Her under Section 1981 and the First Amendment for His Intentional Discrimination*

Defendants argued that Chief Judge Morrison had qualified immunity against plaintiff's claims for race-discrimination under Section 1981 and political-speech retaliation under the First Amendment. The district court did not reach the issue of qualified immunity regarding race discrimination, instead finding that Ms. McLin's claim was not "plausibly" pled (as against both Judge Morrison and the 21st JD). The district did, however, sustain Judge Morrison's

qualified immunity defense against Ms. McLin's First Amendment

claim. As a threshold matter, plaintiff's claim for disparate treatment

discrimination based on race are well-pled because they are plausible at

this stage of the proceeding. And, given those plausible allegations of

race discrimination and First Amendment retaliation, Judge Morrison's

claim of qualified immunity under Rule 12(b)(6) must be denied because

all public officials know that employment discrimination based on race,

and retaliation based on the content of political speech, are illegal in

our Circuit.

1.    *Plaintiff's Race Discrimination Claim Is Plausible and Well Pled*

Defendants claim Ms. McLin's race discrimination claim under

Title VII and Section 1981 are not well pled under *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007). But, in context, defendants really

suggest Ms. McLin must allege a *prima facie case* under the familiar

*McDonnell Douglas* standard but has failed to allege a similarly

situated comparator. The district court seemed to agree:

> Plaintiff satisfies the first three elements of her [*prima facie*]
> claim: she belonged to a protected class (white), excelled at
> her position, and was nonetheless fired. Still, as noted in
> Defendants' dismissal papers, Plaintiff falters at the fourth
> element because she has not plausibly alleged any

> differential treatment, which requires allegations
> establishing that a "similarly situated" comparator was *not*
> fired despite committing nearly the same misconduct.

(ROA.216-17) (internal citations omitted) (emphasis in original).  At the risk of belaboring the point, both the Supreme Court and this Court have repeatedly held in the past twenty years that a *prima facie case* under the *McDonnell Douglas* framework is an evidentiary standard, not a pleading one.  *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement"); *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) ("Although Raj does not challenge the district court's interpretation of his pleading burden, we nonetheless note that a plaintiff need not make out a *prima facie case* of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim"); *and also Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019)  ("We reiterate, however, that a court errs by requiring a plaintiff to plead something more than the 'ultimate elements' of a [discrimination] claim").

In *Cicalese*, this court recently reversed dismissal of an employment discrimination claim under Rule 12(b)(6), finding that

while the defendants and district court had attempted to frame the dismissal as a pleading issue under *Twombly* and *Iqbal*, in reality the district court had impermissibly imposed a heightened pleading burden prohibited by *Swierkiewicz* and its progeny. *Cicalese*, 924 F.3d at 766-68. The facts and holding in *Cicalese* should likewise result in reversal in this case.

In *Cicalese*, plaintiffs were two Italian-American physicians employed by the University of Texas. They sued their employer under Title VII alleging national origin discrimination. Relevant here, the plaintiffs' supervisor once remarked "What are you doing here? You should go back to Italy." *Id.* at 764. Plaintiffs alleged in their amended complaint that their supervisor took various adverse actions against them (not resulting in termination). Plaintiffs alleged that another supervisor also made remarks critical of people with Italian ancestry, likewise taking action against him, including reducing his salary and restricting his work. *Id.* at 765.

Plaintiffs sued alleging "direct and/or circumstantial evidence exists showing that [the University] intended to discriminate against them because of their national origin, in violation of Title VII." *Id.*

Defendants moved to dismiss the complaint under Rule 12(b)(6), arguing that the plaintiffs "had failed to state a plausible national origin discrimination claim . . . under Title VII." The district court granted the motion, finding plaintiffs allegation unplausible because they did not "allege with adequate specificity that any 'similarly situated' non-Italian employee was treated differently" or "how [plaintiffs'] co-workers 'were treated differently under *nearly identical* circumstances." *Id.* at 767.

This Court reversed, finding that while the district court couched its analysis under "plausibility pleading standard of *Twombly/Iqbal*," *id.* at 766, the "district court erred by holding Appellants to a heightened pleading standard." *Id.* at 768.

> As we have stated, there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an "adverse employment action," (2) taken against a plaintiff "because of her protected status" . . . We reiterate, however*, that a court errs by requiring a plaintiff to plead something more than the "ultimate elements" of a claim.* A court thus inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss.

*Id.* at 767 (emphasis added).  This Court accordingly reversed because "on a *de novo* review of Appellants' live complaint, we conclude they surmounted that lower bar" of pleading enough plausible facts "going to the ultimate elements of the claim[.]" *Id.* at 768.

Here, both the defendants and district court faulted Ms. McLin for not alleging a "similarly situated" comparator with "nearly identical circumstances," specifically to allege "at least *one* occasion when a co-worker used slang to describe the 21st JDC's constituents, or used Facebook to sound off regarding the George Floyd protestors (or any other matter of public concern" (ROA.219). (emphasis in original).  To that end, the district court erred in the same was the district court in *Cicalese.*

Otherwise, Ms. McLin's verified allegations contained in her amended complaint plausibly allege both race and political-speech retaliation.  Ms. McLin was a documented performer who had been promoted, given a raise, and awarded a letter of commendation.  Her immediate supervisor, Sara Brumfield, told Ms. McLin the day of her termination that "I hate having to do this" but she "had no choice" and her "hands were tied."  Chief Judge Morrison candidly told Ms. McLin

"In today's world that we live in, I have no other choice but to terminate you.  You need to watch what you say and do."  Ms. McLin – who was there and heard the words, tone, and witnessed Judge Morrison's demeanor – understood his remarks to mean he felt compelled to fire Ms. McLin given the overall facts of the matter: she was a white woman, who posted a critical view of civil rights protestors in the wake of George Floyd's murder, and a co-worker, who was black, complained about the post.  Implicit in Judge Morrison's words, at least to Ms. McLin's perception, was that she would not have been fired if she had offered the same critique but was a race other than white, nor would she have been fired if Ms. McLin, as a white woman, had posted a political view supporting the protestors at issue.

The bottom line is that Ms. McLin was there, heard Judge Morrison's words, and she took them to mean she was terminated for her race and for the content of her speech.  If she is right, or if Judge Morrison confirms the matter, then plaintiff has already alleged direct evidence of race discrimination.

Ms. McLin also "specifically" alleged in her verified amended complaint that T.D. – the woman who had complained about Ms.

McLin's Facebook post – "has posted political endorsements online and via Facebook that presumably violate the 21st JDC policy prohibiting such public political endorsements," but T.D. was not reprimanded for the issue (ROA.110).

The district court faulted Ms. McLin for making this allegation "upon information and belief" in the context of *Twombly*, and if given the opportunity to amend out that phrase plaintiff would do so, but plaintiff began the allegation by indicating T.D. had "specifically" engaged in that misconduct (ROA.110).  Combined with Ms. McLin's attached verification swearing that the allegations in her complaint were true and correct to the best of her knowledge and recollection, this should suffice to signal to the court that Ms. McLin has knowledge that T.D., in fact, posted political endorsements online presumably in violation of their employer's policies without, apparently, repercussion.

Whether under *Swierkiewicz*, *Twombly*, or *Cicalese*, Ms. McLin alleged plausible facts going to the ultimate two elements of her race discrimination claim under both Title VII and Section 1981: (1) she was fired (2) because of her race.

2.    *Chief Judge Morrison Is Not Entitled to Qualified Immunity This Stage of the Proceeding based on Plaintiff's Well Pled Allegations*

Chief Judge Morrison asserted qualified immunity against both Ms. McLin's race-discrimination claim under Section 1981/1983 and her political-speech retaliation claim under the First Amendment / 1983. The district court never reached the issue of immunity against plaintiff's race discrimination claim but did conclude Judge Morrison was entitled to immunity against plaintiff's First Amendment claim.

At this stage of the proceeding, based on plaintiff's well-pled allegations, Chief Judge Morrison is not entitled to qualified immunity against either claim.  At the very least, if the district court believed "clarification of fact" was necessary to rule on the defense, the court should have "defer[red] its qualified immunity ruling and order[ed] limited discovery" on the issue.  *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (affirming district court's deferred ruling on qualified immunity defense and narrowly tailored discovery order).

As a threshold matter, defendants do not cite to any cases in which a public official sued for race discrimination under Section 1981/1983 successfully invoked qualified immunity.  Nevertheless,

plaintiff acknowledges her burden to demonstrate facts, assuming they are true for purposes of Rule 12(b)(6), demonstrate that Chief Judge Morrison violated one of her federal statutory rights and did so when the right was clearly established at the time. *See, e.g.*, *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004).

Discrimination in employment based on race, resulting in termination, has been clearly established as illegal under Section 1981 since at least December 1, 1990. *See Mitchell v. Crescent River Port Pilots Ass'n*, 265 Fed. Appx. 363, 367 (5th Cir. 2008) (noting that amendment of Section 1981 in 1990 conclusively outlawed terminating an employee because of her race). The Fifth Circuit has specifically rejected a state official's qualified immunity defense against a claim of disparate treatment retaliation under Section 1981. *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003).

Here, defendant is likely stuck, at least at this stage of the proceeding. If this Court finds that Ms. McLin's allegations of race-discrimination are plausible under *Swierkiewicz* / *Twombly* / *Cicalese*, then of course Judge Morrison cannot invoke qualified immunity because deciding to terminate Ms. McLin because of her race was

objectively and obviously illegally at the time.  As argued *supra*,

plaintiff's claims of race discrimination, at least at this stage, are well

pled, plausible, and must taken as true in the context of this Rule

12(b)(6).

Likewise, the First Amendment, through Section 1983, prohibits a

public employer from terminating a public employee for speaking "on

issues of public importance." *Pickering v. Bd. of Ed. of Twp. High Sch.*

*Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 574 (1968).  Once again,

defendants did not seem to cite to any case in which a public official

successfully invoked qualified immunity against a claim of First

Amendment retaliation in the workplace. In contrast, this Court has

rejected such a claim by a public employer.  *See Modica v. Taylor*, 465

F.3d 174, 183 (5th Cir. 2006).

The district court nevertheless sustained Judge Morrison's

immunity defense under the framework established by this Court in

*Modica*:

> To prevail on a § 1983 First Amendment retaliation claim, a public employee must establish the following: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) her speech motivated the employer's adverse action.

*Id.* at 179-80. The district court determined "Plaintiff's allegations satisfy the first, second, and fourth elements of her claim," but held Ms. McLin could not prove the third element of her claim (apparently as a matter of law), that her "interest in commenting on the George Floyd protests outweighed Chief Judge Morrison's constitutional duty to promote the efficient operation of the 21st JDC" (ROA.221).

Plaintiff acknowledges that to prove her claim for First Amendment retaliation in the workplace, she must eventually produce facts that demonstrate her interests to engage in political speech on social media in the context of the case outweighed the 21st JD's interest in promoting efficiency. The problem here is that, on a motion to dismiss under Rule 12(b)(6), the district court concluded plaintiff could *never* meet this burden by making four findings of fact outside the four corners of the amended complaint.

The District Court found that Ms. McLin's post (1) "did not contribute anything meaningful to the public discourse regarding the protestors' tactics," (2) was "optimized to invoke outrage, and to undermine public confidence in the impartiality of the 21st JDC on the issue of protestors' tactics," (3) "weakened workplace morale and impaired harmony among co-workers," and (4) "jeopardized the regular operation of the 21st JDC" (ROA.222-25).

Ms. McLin alleged in her amended complaint the opposite. Plaintiff alleged, first, that she made her post on her own time, using her own digital device, never identifying herself as a court employee. Ms. McLin also alleged that for five months after she made her post, it did not appear to her that anyone in public or at the courthouse knew anything about it. Ms. McLin specifically alleged that the post did not disrupt the work environment at the courthouse, other than apparently causing Judge Morrison to fire her. While T.D. apparently complained about the post to Judge Edwards, and that Judge Edwards referred the matter to Chief Judge Morrison, there are no facts anywhere in the pleadings that the post impacted moral. Nor are there any facts in the record to suggest public perception of the 21st JDC was or could have

been affected by Ms. McLin's post from five months earlier, on which she never identified herself a court employee. Finally, there are certainly on facts to suggest Ms. McLin posted the message to "invoke outrage."

There is a second problem with the district court's reasoning peculiar to Louisiana employers. Louisiana has its own state statute prohibiting employment discrimination based on political activities. La. Rev. Stat. Ann. § 23:961. There are few state court cases interpreting § 23:961, but one of those cases directly holds no Louisiana employer has a lawful business justification to terminate an employee because of his or her political activities. *Davis v. La. Computing Corp.*, 394 So.2d 678, 679-80 (La. Ct. 4 App. 1981) (affirming judgement against defendant-employer that fired its employee because he ran for political officer against the employer's biggest customer, risking actual financial harm to the company). The Fifth Circuit's analysis in *Modica* permits an employer to weigh an employee's interest to engage in protected speech against the employer's interest in promoting efficiency. But as a matter of Louisiana substantive law, a Louisiana employer has no legitimate business interest in the first place to limit an employee's political

speech, at least insofar as that speech constitutes a "political activity" under § 23:961.

Putting aside this state law issue, plaintiff acknowledges the underlying premise of the district court's decision – that Chief Judge Morrison would eventually be entitled to qualified immunity if Ms. McLin could not make out the elements of her claim. But, here, on a motion to dismiss under Rule 12(b)(6), the district court was bound to accept Ms. McLin's well-pleaded allegations as true. Those allegations do not give rise to the factual findings the district court predicated its decision upon.

## X.    CONCLUSION

For these reasons, appellant Katelynn McLin asks this Court to reverse the final judgment of the district court dismissing her case with prejudice.

Respectfully submitted:
/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com
*Attorney for Appellant Katelynn McLin*

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25 and Fifth Circuit Rule 25.2.5, I,

Kevin S. Vogeltanz, certify that on October 27, 2022 I filed appellant's

original brief via the Court's CM/ECF system.  To the best of my

knowledge, all parties in this case are represented by attorneys who are

registered Filing Users in this case and who will receive notice through

the Court's CM/ECF system.

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com
*Attorney for appellant Katelynn McLin*

## CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.3, I hereby certify that this brief complies with the type-volume limitations of 5th Cir. R. 32.2 and Fed. R. App. P. 32(a)(7)(b) because: excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,300 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, version 16.54, in Century Schoolbook font, with 14-point font for text with no footnotes.

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Appeal Counsel
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com