CASE NO. 22-30490

---

## UNITED STATES COURT OF APPEALS
## FIFTH CIRCUIT

---

**KATELYNN MCLIN,**
**Plaintiff – Appellant**

v.

**TWENTY-FIRST JUDICIAL DISTRICT; ROBERT H. MORRISON, III,**
**Defendants – Appellees**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF LOUISIANA**
**(USDC NO. 3:21-CV-411)**

---

**REPLY BRIEF OF APPELLANT KATELYNN MCLIN**

---

Respectfully submitted:

**THE LAW OFFICE OF**
**KEVIN S. VOGELTANZ, LLC**
Kevin S. Vogeltanz (Bar #32746)
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com
*Attorney for Plaintiff / Appellant*
*Katelynn McLin*

# I.    TABLE OF CONTENTS

I.    TABLE OF CONTENTS ....................................................i

II.    TABLE OF AUTHORITIES ............................................ii

III.    REPLY ARGUMENT ......................................................... 1

    A.  The Judicial District Has Capacity to Be Sued for Its Own Employment Torts under a *Roberts* Analysis ........................... 1

    B.  The Judicial District Has Capacity to Be Sued for Its Own Employment Torts under Louisiana's Employment Statutes... 6

    C.  The Judicial District Has Capacity to Be Sued for Its Own Employment Torts Directly under Title VII ............................. 9

    D.  The Cases Cited by Defendants Are not Persuasive and Are Consistent with the Judicial District's Juridical Status ........ 13

    E.  The Judicial District, at Least When Acting as an Employer, Is a Local Political Subdivision, not a State Employer ............... 17

    F.  Ms. McLin Plausibly Alleged Discrimination Based on Race against Retired Judge Morrison ................................................. 19

    G.  Judge Morrison Is Not Entitled to Qualified Immunity against Plaintiff's Political-Speech Retaliation Claim at This Stage of the Case.................................................................................... 24

IV.    CONCLUSION ............................................................... 27

CERTIFICATE OF SERVICE ................................................ 28

CERTIFICATE OF COMPLIANCE ....................................... 29

## II.    TABLE OF AUTHORITIES

**CASES**

*Alderman v. Great Atl. & Pac. Tea Co., Inc.*,
    332 F.Supp.2d 932 (E.D. La. 2004)...............................................11

*Anderson v. Valdez*,
    845 F.3d 580 (5th Cir. 2016) .........................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................22

*Bulova Watch Co. v. U.S.*,
    365 U.S. 753 (1961) ......................................................................10

*California Fed. Sav. & Loan Ass'n v. Guerra*,
    479 U.S. 272, 281 (1987). ...............................................................9

*Cicalese v. Univ. of Texas Med. Branch*,
    924 F.3d 762 (5th Cir. 2019) ..................................................21, 22

*Davis v. La. Computing Corp.*,
    394 So.2d 678 (La. Ct. 4 App. 1981) .............................................8

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ......................................................................11

*Forrester v. White*,
    484 U.S. 219 (1988) ......................................................................16

*Green v. District Attorney's Office*,
    Civ A. 08-3685, 2009 WL 651132 (E.D. La. Mar. 10, 2009) ..........13

*Hudson v. City of New Orleans*,
    174 F.3d 677 (5th Cir. 1999) ..................................................17, 19

*In re Prescription Home Health Care, Inc.*,
    316 F.3d 542 (5th Cir. 2002) .........................................................10

*Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*,
    512 F.3d 157 (5th Cir. 2007) .........................................................23

*Modica v. Taylor,*
    465 F.ed 174 (5th Cir. 2006) ........................................................ 24

*Roberts v. Sewerage and Water Bd. Of New Orleans,*
    634 So.2d 341 (La. 1994) ....................................................... passim

*Rutherford v. Louisiana,*
    Civ. A. 10-1987, 2011 WL 692031 (E.D. La. Feb. 17, 2011) .......... 14

*Taylor v. Hartley,*
    488 F.Supp.3d 517 (S.D. Tex. 2020) .............................................. 25

*Weatherly v. Pershing, L.L.C.,*
    945 F.3d 915 (5th Cir. 2019) ........................................................ 14

**STATUTES**

42 U.S.C. § 1981 ................................................................................ 19

42 U.S.C. § 1983 ......................................................................... 13, 19

42 U.S.C. § 2000e ............................................................................... 9

42 U.S.C. § 2000e-5 ..................................................................... 9, 12

La. Civ. Code art. 24 ..................................................................... 3, 15

La. Rev. Stat. Ann. § 13:5109 ......................................................... 17

La. Rev. Stat. Ann. § 23:302 ............................................................. 7

La. Rev. Stat. Ann. § 23:303 ............................................................. 7

La. Rev. Stat. Ann. § 23:961 ...................................................... 7, 17

**RULES**

Fed. R. Civ. P. 17 ....................................................................... 10, 11

## OTHER AUTHORITIES

*Black's Law Dictionary* (11th ed. 2019).....................................................2

## III.   REPLY ARGUMENT

### A.  The Judicial District Has Capacity to Be Sued for Its Own Employment Torts under a Roberts Analysis[1]

The parties' ideas about Louisiana's law of capacity and the correct application of *Roberts v. Sewerage and Water Bd. Of New Orleans* to this case are mutually exclusive, and this Court must decide which side has better stated the law.  Plaintiff starts with the words of the *Roberts* court:

> Local government units such as the SWB are generally treated as separate and distinct public juridical persons or corporations ***for certain purposes*** whether they are called that or not.

> The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made ***in each particular case*** is whether the entity can appropriately be regarded as an additional and separate government unit ***for the particular purpose at issue***.

---

[1] Plaintiff / Appellant repeats here what she has previously argued at the district court below and in her original brief to this Court.  Plaintiff believes the more proper designation of Ms. McLin's employer is the Twenty-First Judicial ***District***, not the Twenty-First Judicial District ***Court***, but plaintiff has always maintained that her complaint (and amended complaint) should be construed as naming the real party in interest – her employer.  *See Plt. Brief* at 19-20 *and also* ROA.166 at n. 1.  Here, in this case, there appears no substantive legal difference to any of plaintiff's arguments based on whether her employer is more properly referred to as the Judicial District or Judicial District Court.  If this Court determines the correct identifier is the Judicial District *Court*, and if that distinction is somehow outcome-determinative, plaintiff respectfully asks this Court to remand her case to the district court with instructions to permit amendment of her complaint to make that correction.

> ***In the absence of positive law to the contrary***, a local
> government unit may be deemed to be a juridical person
> separate and distinct from other government entities, when
> the ***organic law grants it the legal capacity to function
> independently*** and not just as the agency or division of
> another governmental entity. Such a determination will
> ***depend on an analysis of specifically what the entity is
> legally empowered to do***.[2]

The holding of *Roberts* is clear on its face without interpretation.

Local governmental units in Louisiana are regarded as "juridical

persons" for "the particular purpose at issue" so long as two conditions

are met. First, there must be no "positive law" against juridical status.

"Positive law" here means legislative law. *Black's Law Dictionary* (11th

ed. 2019) ("Positive law typically consists of enacted law – the codes,

statutes, and regulations that are applied and enforced in the courts").

In other words, there must be no legislative law declaring the entity

lacks juridical status. In this case, neither party has found any such

positive law. There is none.

Second, an entity possesses juridical status when the "organic law

grants it the legal capacity to function independently and not just as the

agency or division of another governmental entity." Here, "organic law"

---

[2] *Roberts v. Sewerage & Water Bd. of New Orleans*, 634 So.2d 341, 346-47 (La. 1994)
(internal citations omitted, emphasis and spacing added).

means the grundnorm creating the entity at issue.  Specifically, the Civil Code instructs "The capacity of a juridical person is governed by provisions in its charter, governing legislations, and customs."  La. Civ. Code art. 24 cmt. d.  At least in employment matters – and such is all that Plaintiff argues to the Court today – Louisiana's organic law must permit Judicial Districts to employ workers because that is exactly what the Twenty-First Judicial District does; what it holds itself out to do; and what it did do when it hired Ms. McLin, funded and paid her wages, and eventually terminated her.

Defendants-appellees interpret *Roberts* differently.  On brief, Defendants argue "The organic law does not grant judicial districts the legal capacity to function independently.  In contrast to statutes creating and regulating the judicial districts are those creating entities with juridical personality . . . There is no equivalent statute granting a judicial district this range of capacity."  *Def. Brief* at 24-25.

Here, Defendants make the mistake of thinking "organic law" means affirmative legislation granting an entity juridical status.[3]  That is not

---

[3] For instance, Defendants argue that the Louisiana constitution does not grant judicial districts juridical personality.  In reality, the Louisiana constitution is silent on the matter.  This again conflates affirmative, "positive law" restricting

what organic law means in this context.  Positive law is legislation.
Organic law means, here, what the entity is empowered to do.  When no
positive law forbids juridical status (and there is no such legislation
here), then the entity possesses juridical status at least for "what it is
legally empowered to do."

Here, the Twenty-First Judicial District employed Ms. McLin.
Defendants make no argument that the Judicial District acted illegally
when it hired her (or when it hires any of its other staff).  Defendants do
not suggest the Louisiana Supreme Court, appellate courts, or any
other superior state official had the authority to hire or fire Ms. McLin
except for the Judicial District through its chief executive at the time,
Judge Morrison.

On brief, Defendants argue the district courts and district court
judges are supervised to some extent by the Louisiana Supreme Court;
that other state entities own the courthouse buildings and land; and
that judges' salaries are set and funded by legislature.  Perhaps so.  But
the questions of who has the authority to discipline a Louisiana judge;
or who owns the courthouse steps; or who funds a judge's salary are not

---

juridical personality with the "organic law" of what a judicial district is
empowered to do through law or custom.

the subject of this case or the relevant *Roberts* analysis. The sole
questions at the district court below, and now on appeal, is what entity
employed Katelynn McLin, what entity funded and paid her wages,
what entity controlled her work, and what entity fired her. Plaintiff
alleged in her lawsuit that the answer to each of those questions was
the Twenty-First Judicial District. Defendants have not seriously
argued otherwise to this Court.

The *Roberts* court held "the determination that must be made ***in
each particular case*** is whether the entity can appropriately be
regarded as an additional and separate government unit ***for the
particular purpose at issue.***" *Roberts*, 634 So.2d at 346. This
strongly suggests that a governmental entity might have juridical
personality in one context, but not in others. On brief, Defendants
reject this plain reading of the *Roberts* text: "*Roberts* does not hold that
a political subdivision has the capacity to be sued for one thing but not
the other." *Def. Brief* at 27. But Defendants offer no explanation or
persuasive case law to back up their interpretation of *Roberts*.

If Plaintiff is wrong, and if Defendants are correct, and a
governmental entity either universally has or does not have juridical

personality in all contexts, then what did the *Roberts* court mean when it held "the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue"? Defendants give no answer.

Ultimately, a *Roberts* analysis strongly favors recognizing the Twenty-First Judicial District in this case as a juridical person for the purpose of Ms. McLin's federal and state law employment claims. The Judicial District was her employer. It must necessarily possess juridical personality for that particular purpose. It must necessarily have at least enough juridical status to be held liable for its employment-based torts.

## B. The Judicial District Has Capacity to Be Sued for Its Own Employment Torts under Louisiana's Employment Statutes

*Roberts* only applies when legislation (the positive law) is silent about juridical status. Here, however, Louisiana legislation seems to explicitly confer on any governmental employer the capacity to be sued for intentional employment discrimination under Louisiana state law. The Louisiana Employment Discrimination Law (LEDL) defines an

"employer" as "the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to any employee." La. Rev. Stat. Ann. § 23:302(2).

In turn, the LEDL permits an employee to "file a civil suit in a district court" against her employer for violations of the statute. La. Rev. Stat. Ann. § 23:303(A). On brief, Defendants correctly point out that this is a Title VII case, not an LEDL case, but surely defendants are not arguing that Louisiana law confers personality to the Twenty-First Judicial District for intentional employment discrimination under *state law*, but denies the Judicial District personality for intentional employment discrimination under Title VII? Because *that* likely runs afoul of the Supremacy Clause arguments briefed *infra* (a state cannot, by legislation, grant an entity the capacity to be sued under state law but exempt that same entity from capacity to be sued under analogous federal law).

Separate and apart from the LEDL, Ms. McLin did sue the Judicial District as her employer under Louisiana's political discrimination statute, La. Rev. Stat. Ann. § 23:961. Under 23:961, An "employer" is

prohibited from terminating an employee because of the employee's "political activities." 23:961 permits an employee to sue her employer for damages and suffering "caused by the employer's violations of this Section." *See also Davis v. La. Computing Corp.*, 394 So.2d 678, 679-80 (La. Ct. 4 App. 1981) (affirming judgment for damages against defendant-employer under 23:961). Unlike the LEDL, 23:961 does not contain any special definition for "employer," and Ms. McLin alleged her "employer" was, in fact, the Twenty-First Judicial District. Under a plain reading of the 23:961, the Twenty-First Judicial District, as Ms. McLin's employer, has capacity to be sued for political-based employment discrimination. Defendants offer no serious arguments against this reasoning.

Had the Louisiana legislature wanted to exempt judicial districts from the definition of an "employer" in either the LEDL, 23:961, or any other Louisiana employment discrimination statute, it could have easily done so. It did not. Instead, the Louisiana legislature broadly granted any employee the right to sue her covered employer for violations of Louisiana employment law. For the same reasons, there is no plausible

argument that Judicial District employers lack capacity to be sued

under Title VII.

## C.  The Judicial District Has Capacity to Be Sued for Its Own Employment Torts Directly under Title VII

Plaintiff argued at both the district court and now on appeal that

Congress, in enacting Title VII, defined an employer to include

"governments, governmental agencies, political subdivisions" and

"unincorporated organizations."  42 U.S.C. § 2000e(a).  Title VII further

provides an employee the right to file suit against her employer after

exhausting her administrative remedies.  42 U.S.C. § 2000e-5(f)(1).  On

its face, Congress, through Title VII, seems to have explicitly authorized

suit against any state or local government agency or political

subdivision as a matter of federal law.

Plaintiff previously argued the plain text of Title VII confers

whatever capacity is necessary on any state or local employer to bring

suit against it for its own federal employment torts, and any state law

of capacity to the contrary necessarily conflicts with Title VII.  "In those

areas where Congress has not completely displaced state regulation,

federal law may nonetheless pre-empt state law to the extent it actually

conflicts with federal law." *California Fed. Sav. & Loan Ass'n v.
Guerra*, 479 U.S. 272, 281 (1987).

Both the district court and Defendants rejected that reasoning out of
hand based on Fed. R. Civ. P. 17(b), which provides "Capacity to sue or
be sued is determined . . . by the law of the state where the court is
located[.]" Implicit to that rejection is the notion that Federal Rule
17(b)'s general reservation of the issue of capacity to state law trumps
Congress's explicit creation of federal-law liability against all covered
employers under Title VII, including local governmental employers like
the Twenty-First Judicial District.

But neither the district court nor Defendants suggest why Federal
Rule 17, a procedural rule of general applicability originally enacted in
1937, should trump Congress's decades-later and explicit imposition of
liability against covered "employers" – a defined class of defendant
expressly subject to suit in federal court under Title VII – which
includes local governmental units like the Twenty-First Judicial
District. "[I]t is familiar law that a specific statute controls over a
general one without regard to priority of enactment." *Bulova Watch Co.
v. U.S.*, 365 U.S. 753, 758 (1961) (quotations omitted); *accord In re*

*Prescription Home Health Care, Inc.*, 316 F.3d 542, 548 (5th Cir. 2002) ("it is well established that a more specific statute controls over a more general one").

When Congress enacted Title VII in 1964, specifically authorizing an aggrieved employee to sue her employer in federal court, and further defining "employer" to include local governmental units like the Twenty-First Judicial District, did Congress really intend for Louisiana state law, through Federal Rule 17(b), to exempt those local governmental units from liability based on Louisiana's state law of capacity? "[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000).

Alternatively, even if Title VII's specific statutory cause of action against a covered employer must ordinarily yield to Federal Rule 17(b), the fact remains that Louisiana state law apparently permits any employee to sue her covered employer (including governmental employers) under the LEDL, 23:961, and a host of other state anti-discrimination statutes. The LEDL is Louisiana's state-law, anti-

discrimination analogue to Title VII.  *Alderman v. Great Atl. & Pac. Tea Co., Inc.*, 332 F.Supp.2d 932, 936 (E.D. La. 2004) ("Because of its doctrinal similarity to Title VII, and the related social goals of both statutes, Louisiana courts routinely look to Title VII to interpret the LEDL").  Taken to its conclusion, the position advanced by both the district court and Defendants is that Louisiana's legislature or state courts have the authority to pick and choose which local governmental employers are liable under Title VII and which are not based their state-law classifications as "juridical persons."  That would be a startling result.

Such an argument might have more force if Louisiana state law consistently excluded governmental employers like the Twenty-First Judicial District from suit under **both** Louisiana **and** federal anti-discrimination law.  But that does not appear to be the case under the LEDL, 23:961, or other state employment law.  And the idea that Louisiana state law grants juridical personality to local employers for state-law employment violations, while simultaneously excluding those same employers from liability under analogous federal employment law, delves too greedily and too deep into the supposed protection Federal

Rule 17 affords against the weight of Congress's explicit imposition of liability in Title VII.  In enacting Title VII, Congress gave no indication it intended an otherwise covered employee to escape liability under federal law even though that same covered employer possessed the capacity to be sued for violations of analogous state employment law.

### D.  The Cases Cited by Defendants Are not Persuasive and Are Consistent with the Judicial District's Juridical Status

At first blush, Defendants strongest argument against the juridical personality of a Judicial District employer is the string of federal district court decisions in Louisiana holding a Judicial District Court is not capable of being sued under Louisiana state law, most often in the context of prisoner litigation under 42 U.S.C. § 1983.  *See Def. Brief* at 23.  But with the exception of *Griffith*, discussed at length in appellant's original brief and ultimately permitting a plaintiff's Title VII lawsuit against the Orleans Parish Juvenile Court to move forward, it does not appear that any of the cases cited by Defendants conducted a *Roberts* analysis for the "particular purpose" of conferring juridical personality in employment tort cases.  At least one of these federal district decisions recognized "Louisiana [state] courts have not yet ruled on the precise

issue of whether a district court is a juridical person[.]" *Green v. District Attorney's Office*, Civ A. 08-3685, 2009 WL 651132,  at *4 (E.D. La. Mar. 10, 2009).  To the extent the juridical personality of a Louisiana governmental entity is a question of purely state law, a federal district court's opinion is not determinative. *Weatherly v. Pershing, L.L.C.*, 945 F.3d 915, 920-21 (5th Cir. 2019) ("we must make an *Erie* guess as to what the [state] Supreme Court would most likely decide").[4]

Instead, all (or certainly the majority) of these federal district court cases were decided in the context of prisoner litigation or other claims for deprivation of rights under 42 U.S.C. § 1983.  *See, e.g.*, *Rutherford v. Louisiana*, Civ. A. 10-1987, 2011 WL 692031, at *5 (E.D. La. Feb. 17, 2011) (determining the 21st Judicial District Court is not a "person" under Section 1983 nor capable of being sued under Louisiana state law, citing back to *Green*).  These cases are not helpful to determining

---

[4] This Court bases an *Erie* guess on "(1) decisions of the state supreme court in analogous cases, (2) the rationales and analyses underlying state supreme court decisions on related issues, (3) dicta by the state supreme court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which state courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries." *Weatherly*, 945 F.3d at 920.

whether a Judicial District employer has juridical personality with respect to its own employment torts against its own employees because, first, that question was never apparently asked or analyzed, and the *Roberts* court makes clear that the issue of juridical personality "will depend on an analysis of specifically what the entity is legally empowered to do" in "each particular case." *Roberts*, 634 So.2d at 346-47.

Second, it seems entirely reasonable that a Judicial District might lack capacity to be sued for its "public" judicial acts but retain capacity to be sued for its "private" employment torts given the "dual" juridical personality that all Louisiana public entities possess. "The state and its political subdivisions have dual [juridical] personality. At times they act as public persons in a sovereign capacity and at times as private persons in the capacity of a citizen or a private corporation." La. Civ. Code art. 24 cmt. (c).

To be clear, nothing that Plaintiff has argued before or argues now seeks or requires overturning the decisions of the multiple federal district courts holding that Louisiana judicial districts are not capable of being sued for their official, public, judicial acts. But that is not

because, as defendants would have the Court believe, juridical personality under Louisiana law is a universal status that applies, all-or-nothing, to each particular entity. Instead, it is because juridical personality of a public entity depends entirely on the particular case at issue and what the entity is attempting to do or be held accountable for.

Under Louisiana's civilian doctrine, a Judicial District likely does not have juridical personality to be sued for its judicial acts – because, in the words of *Roberts*, those judicial acts are not legally separatable from Louisiana's overall judicial system – but that same Judicial District likely does have capacity to be sued for its employment-based torts when it acts as "a citizen or private corporation" as it does when it acts as an employer. This is little more than the same sort of distinction the United States Supreme Court noted in *Forrester v. White*, 484 U.S. 219, 221 (1988), wherein the Court held absolute judicial immunity applied to a state-court judge's "judicial acts," but not his "administrative acts" when he "demoted and discharged" a courthouse employee. Status often depends on context. When a Judicial District acts as an employer, it acts as a juridical person in the employment context, and can be held accountable for its employment torts.

### E. The Judicial District, at Least When Acting as an Employer, Is a Local Political Subdivision, not a State Employer

If the Twenty-First Judicial District is a juridical entity capable of being sued for its own employment torts, the parties still argue over whether the Judicial District is a state employer or local employer for purposes of Eleventh Amendment sovereign immunity. *See Def. Brief* at 32-39.  The parties agree a State employer would enjoy sovereign immunity against Ms. McLin's cause of action for political discrimination under La. Rev. Stat. Ann. § 23:961, but a political-subdivision employer would not.  The parties also agree that this Court's framework in *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999) should be used to determine whether the Twenty-First Judicial District is a State or local employer.  The parties even agree that the most important of the *Hudson* factors is what entity would ultimately be liable to pay a money judgment against the entity.

The parties dispute, however, who that responsible entity would be. The statutory provisions cited by Defendants are not helpful or persuasive to the question.  Plaintiff agrees that, under Louisiana state law, judgments against the State must be paid by the State, and

17

judgments against a political subdivision must be paid by the political subdivision. *See* La. Rev. Stat. Ann. § 13:5109(B)(2). With zero justification, the Defendants assert that "If a judgment were somehow rendered against a judicial district, it presumably would be paid out of the state treasury." Why? Defendants do not say and do not cite to any relevant statutory provision supporting their contention.

In contrast, plaintiff specifically alleged in her verified First Amended Complaint that "any money judgment against the 21st JDC would be satisfied from the 21st JDC's general fund and not paid directly by the government or treasury of the State of Louisiana." ROA.102. This allegation is plausible because the "largest overall source of revenue for the 21st JDC . . . was the collection of civil and criminal fees and fines paid by litigants and criminal defendants (sources of income that are not derived from the government or treasury of the State of Louisiana)." ROA.102. These fees and fines fund the Judicial District's operating budget, which in turn funded (among other things) Ms. McLin's wages. ROA.102. In the alternative, plaintiff alleged that the ultimate source of funding for any money judgment "is a question of material fact in this case." ROA.103.

On brief, Defendants offer no argument contrary to plaintiff's well-pled allegations, nor could they in the context of their Rule 12 motion to dismiss. The only pertinent record before this Court, on this question, indicates that a judgment would most likely be funded by the Judicial District itself, through its operating fund, and not by the State or its treasury. The remaining *Hudson* factors likewise favor the determination that the Twenty-First Judicial District, at least in the context of its employment matters, is a political subdivision.

### F. Ms. McLin Plausibly Alleged Discrimination Based on Race against Retired Judge Morrison

Defendants argue that Ms. McLin's cause of action for intentional discrimination because of race against retired Judge Morrison under 42 U.S.C. § 1983 through 42 U.S.C. § 1981 is not well pled. Ms. McLin pled all that she knew: she was a strong performer at the Judicial District who had just been given a commendation for her excellent work, a promotion, and a pay raise one month before her termination (ROA.98-99); she was reported by a co-worker, who was black, concerning a public Facebook post she had made six months prior that criticized and lampooned a group of political protestors who had blocked a stretch of I-244 in Tulsa, Oklahoma in the wake of nationwide

protests against the murder of George Floyd (ROA.106); her immediate supervisor, the Judicial Administrator Sara Brumfield, told her that Judge Morrison ordered her termination and she "hate[ed] having to do this" but her "hands were tied" (ROA.108); and, finally, Judge Morrison told Ms. McLin, face to face, that "In today's world that we live in, I have no other choice but to terminate you.  You need to watch what you say and do."  ROA.108.

Ms. McLin was there, heard Judge Morrison's words, observed his tone and his demeanor, and understood the context of the conversation. ROA.108-109.  Based on the "context, content, and tone" of Judge Morrison's conversation, Ms. McLin took Judge Morrison to mean he was firing her because he "felt compelled to do so because of Ms. McLin's race combined with the race of [her co-worker], the content of Ms. McLin's political Facebook post, and the social and political backdrop of the George Floyd protests taking place across Louisiana and the United States."  ROA.115.  In other words, Ms. McLin alleged that if she had made the exact same Facebook post, but was a person of color, not white, she would not have been terminated.  ROA.115.

The district court and the Defendants argue this was not enough under *Twombly* and its progeny to state a claim for discrimination based on race.  On brief, Defendants concede a plaintiff is not required to plead a prima facie case for intentional discrimination at the pleading stage of the case.  *See Def. Brief* at 41.  This Court has repeatedly said as much. "We reiterate, however, that a court errs by requiring a plaintiff to plead something more than the 'ultimate elements' of a [discrimination] claim." *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019).  What more could Ms. McLin allege that she didn't already?  She had no more facts at her disposal, before discovery, than her eyewitness account of the who, what, when, and how of her termination, including what appeared to have been a half-admission of intentional discrimination by Judge Morrison who felt uneasy about his own decision.

Defendants argue Ms. McLin's allegations are mere "speculation about Judge Morrison's inner thoughts when he spoke." *Def. Brief* at 44.  It's true Ms. McLin inferred Judge Morrison's intent at the time, insomuch as humans often draw reasonable inferences about other people's beliefs and feelings based on their own words and actions.

Here, Ms. McLin alleged exactly what the Supreme Court permitted her to allege at this stage of the case: the reasonable inferences of discrimination based on the facts, circumstances, and conversations she had with Judge Morrison and her Judicial Administrator. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Obviously, if the case proceeds to discovery, retired Judge Morrison will be deposed, and he will answer the question why he fired Ms. McLin and what he meant when he said what he said. But, for purposes of Defendants' motion to dismiss, Ms. McLin has alleged facts that, if true, entitle her to relief as a matter of law.

The district court's decision below, and the Defendants' argument on brief, is really just a roundabout way of trying to hold an employment discrimination plaintiff to a heightened burden to survive a Rule 12 motion to dismiss, either by proffering a comparator at the pleading stage of the case, or by producing direct-evidence of discrimination – essentially a confession or overtly racist commentary – from the defendant. That is not the law of this Circuit. Instead, "there are two

ultimate elements a plaintiff must plead to support a disparate

treatment claim under Title VII: (1) an "adverse employment action,"

(2) taken against a plaintiff "because of her protected status." *Cicalese*,

924 F.3d at 767.  Ms. McLin plausibly alleged both elements in this

case.

Finally, on brief, Defendants alternatively argue Judge Morrison is

entitled to qualified immunity against Ms. McLin's claim of race

discrimination.  This is a surprising argument – that firing someone

because of their race could ever be "objectively reasonable" under the

qualified immunity inquiry – and is one that Defendants only argue in a

single paragraph, with no supporting case law, and which the district

court never addressed in the first place.

In any event, Defendants' arguments lack merit.  It seems likely that

qualified immunity is never applicable in an employment

discrimination case as a matter of law.  This Court has already so held

in an analogous sexual harassment case.  "Thus, qualified immunity

can never offer protection for sexual harassment because, if it is

actionable at all, the harassment is by definition objectively offensive

and unreasonable, and qualified immunity protects only the 'objectively

reasonable.'" *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166–67 (5th Cir. 2007).  Plaintiff cannot think of any situation in which an employer who fired someone because of their race or color acted "objectively reasonably."  Defendants do not suggest such a circumstance in their brief.

**G.  Judge Morrison Is Not Entitled to Qualified Immunity against Plaintiff's Political-Speech Retaliation Claim at This Stage of the Case**

Finally, Defendants argue Judge Morrison is entitled to qualified immunity against Ms. McLin's claim for political-speech retaliation under the Section 1983 through the First Amendment.  *See Def. Brief* at 46-55.  The argument lacks merit, at least at this stage of the case. Plaintiff argued below (ROA.185-187), and the district court apparently agreed (ROA.221-222), that this Court's decision and framework in *Modica v. Taylor*, 465 F.ed 174, 179-80 (5th Cir. 2006) guides resolution of Judge Morrison's qualified immunity defense.  Under *Modica*, the district court conceded that Ms. McLin's allegations satisfied three of the four elements necessary to prove illegal retaliation based on protected political speech.  ROA.221.  The district court nevertheless found that Judge Morrison's interest in promoting an efficient

workplace necessarily outweighed Ms. McLin's right to political speech. ROA.222-225.

In her original brief to this Court, Plaintiff already argued at length that the district court was not permitted to base its reasoning on factual allegations that neither appeared in the pleadings nor could be reasonably inferred from them. *See Plt. Brief* at 65-67. "[E]ven in the context of qualified immunity, the facts alleged must be taken in the light most favorable to the party asserting the injury." *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016) (cleaned up). A defendant cannot win a preliminary motion to dismiss by asserting qualified immunity based on facts other than those pleaded in the complaint. *See Taylor v. Hartley*, 488 F.Supp.3d 517, 531-32 (S.D. Tex. 2020) (denying police officer's motion to dismiss based on qualified immunity because the officer's arguments were predicated on a different version of events than those pled in plaintiff's amended complaint).

On brief, Defendants respond to this argument by arguing the district court's findings of fact beyond the four corners of plaintiff's amended complaint were nevertheless justified. *See Def's Brief* at 52-55. Plaintiff repeats here what she argued in her original brief. In this

Circuit, based on this Court's decisional law, a district court considering a defendant's motion to dismiss based on qualified immunity must still accept a plaintiff's well-pleaded allegations as true.

Ms. McLin alleged, plausibly, and in detail, that her six-month's old Facebook post caused zero disruption to the work environment until a single co-worker scrutinized Ms. McLin's public social media profile, located the political speech in question, and reported it to her supervisor, who then forwarded it to Judge Morrison.  There is zero allegation that the post was seen by any members of the local public. There is zero allegation that the post caused or could have caused any loss of confidence in the local courthouse.

The district court nevertheless made several findings of fact that simply do not appear in the pleadings or the record before this Court, and then based its decision to dismiss Ms. McLin's cause of action on those extraneous findings.  Under the Rule 12 framework, that was error, and Defendants offer no legal justification otherwise.

If Ms. McLin's factual allegations are proven correct in discovery – that her six-month-old Facebook post did not actually impact workplace efficiency or public perception of the local courthouse, then, as the

district court itself implicitly conceded, Ms. McLin is likely to prevail in her case against retired Judge Morrison as a matter of law.

## IV.  CONCLUSION

For all these reasons, the judgement of the District Court dismissing all of Ms. McLin's claims against all defendants in this matter should be reversed, and this matter should be remanded back to the District Court to proceed with litigation.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Katelynn McLin*

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25 and Fifth Circuit Rule 25.2.5, I, Kevin S. Vogeltanz, certify that on January 10, 2023 I filed Plaintiff's reply brief via the Court's CM/ECF system. To the best of my knowledge, all parties in this case are represented by attorneys who are registered Filing Users in this case and who will receive notice through the Court's CM/ECF system.

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Katelynn McLin*

# CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.3, I hereby certify that this brief complies with the type-volume limitations of 5th Cir. R. 32.2 and Fed. R. App. P. 32(a)(7)(b)(ii) because: excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,398 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) and I.O.P. 32.1 because: this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac, version 16.54, in Century Schoolbook font, with 14-point font for text and 12-point font for footnotes.

<div style="margin-left:40%">

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz (Bar #32746)
Appeal Counsel
Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A
Mandeville, LA 70448
Office: (504) 275-5149
Fax: (504) 910-1704
Email: vogeltanz@gmail.com

*Attorney for Appellant Katelynn McLin*

</div>